Edward A. KLETZIEN and Ruth M. Kletzien, Plaintiffs,

v.

FORD MOTOR COMPANY, Defendant.

No. 85–C–1063.

United States District Court,
E.D. Wisconsin.

Aug. 24, 1987.

John N. Gunderson, Chase, Olsen, Kloet & Gunderson, Sheboygan, Wis., for plaintiffs.

Brian W. McGrath, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

WARREN, Chief Judge.

Plaintiffs Edward and Ruth Kletzien ("Kletziens") brought suit against defendant Fort Motor Company ("Ford") pursuant to Chapter 218.015 Wis.Stats. The law is commonly referred to as the "Lemon Law" and provides recourse to the purchaser of a new motor vehicle that requires an inordinate amount of repair within a specified period from time of delivery. The Kletziens allege that the 1984 Mercury Lynx, which they bought on March 6 of that year in Sheboygan, Wisconsin, fell within the provisions of section 218.015. Presently pending before the Court are cross-motions for summary judgment. Based on the decision that follows, the Court denies both motions.

### I. Facts

The Kletziens are residents of Sheboygan. On March 6, 1984, they purchased a new 1984 Mercury Lynx 4–door wagon from Dick Brantmeier Ford, Inc. Brantmeier Ford is an authorized Ford dealer located in Sheboygan. Ford Motor Company is a corporation foreign to Wisconsin. Ford is authorized and licensed to do business in Wisconsin and is engaged in the manufacture and sale of motor vehicles through its authorized dealers. Its principal offices are in Dearborn, Michigan.

The basic retail price of the car was $7,655, with partial financing through the Ford Motor Credit Company. The Kletziens received a standard new car warran-

ty, which Ford says covers one year or 12,000 miles, whichever comes first.

Trouble with the car began in April of 1984. According to an affidavit of John Bertram, Parts and Service Director for Brantmeier Ford, Mr. Kletzien first brought the car in for service on Friday, April 20. He complained of irregular idle, steering vibrations at highway speeds, exhaust leak, and rust and paint bubbles. Mr. Bertram says the problems were "minor" and did not render the car unsafe or undrivable. He says the vehicle was ready for pickup on Monday, April 23, at 10:45 a.m. An affidavit and deposition of Mr. Kletzien states that, based on dates of repair invoices, the car was out of service April 20 through April 30.

The next incident is listed in the affidavit of Mr. Kletzien. It avers that the car was serviced for six days—May 26 to May 31, 1984—at Lakeland Motors in Eagle River, Wisconsin. In a deposition, Mr. Kletzien says that while driving in Three Lakes, Wisconsin, a pulley fell out of the engine.

The next service was June 12, 1984. Mr. Bertram says the following work was performed: a) changing the oil; b) plugging several rustproofing holes; c) adjusting the left-side windshield wiper; d) adjusting the right-side stereo speaker; e) realigning the rear door; f) resealing the left-front directional signal, into which water had leaked; and g) making spot repairs to the body. Mr. Bertram says none of the problems rendered the automobile undrivable or unsafe. He adds that the service was completed by 3:30 p.m. on the day the car was brought in. Mr. Kletzien says the car was out of his service for 15 days—June 14 through June 29.

The car again was serviced on Friday, September 14, 1984. Mr. Bertram says the transmission was removed and the engine seal and clutch replaced. These problems rendered the car undrivable. In addition, the oil was changed and "minor" adjustments were made to the stereo and windshield wipers. Mr. Bertram says service was completed by 4:00 p.m. on Monday, September 17. Mr. Kletzien says the car was under repair for five days—September 14 through September 18.

October 15, 1984, was the date for the next servicing. A front radio speaker and front directional signal were replaced. Mr. Bertram says that Mr. Kletzien complained of brake noise, but nothing wrong was found. Mr. Bertram says that none of the problems caused the car to be undrivable or unsafe and that repairs were completed that day. Mr. Kletzien says service lasted five days, until October 18.

On December 10, 1984, the car was towed to Brantmeier Ford. A "C–clip" relating to the transmission was replaced. Mr. Bertram says severe damage to the car would have resulted had it been driven with a defective "C–clip." He says the car was repaired by December 26. Mr. Kletzien says the service lasted until December 31, a total of 24 days.

Three other servicings are mentioned by Mr. Bertram, but not listed by Mr. Kletzien. They were: February 5, 1985—oil changed and transmission fluid checked; February 29—adjustment of rear window; March 15—adjustment to the heater control and resetting of timing. All were completed the same day.

Mr. Bertram also states that a "loan vehicle" was available to the Kletziens on each occasion that their car was serviced.

Mr. Kletzien says that prior to the expiration of the warranty, but after the above dates, the car operated in "a very jerky manner" when shifting gears. S.A. "Bud" Louis, an employee of Ford, submitted an affidavit wherein he stated that he test drove the car on February 21, 1986, and that there were no defects in the car that would substantially impair its use, value or safety. A deposition and exhibit of a Mr. Matthew VanderVelden of Matt's Auto and Small Engine in Neenah, Wisconsin, states that he examined the car sometime prior to January 26, 1986, and that there were no mechanical problems that would impair operation, but that there was a noise in the left rear tire, slight wear on the axle shaft bushings, valve cover seepage and some transmission pressure.

The Kletziens filed suit in the Circuit Court of Sheboygan County seeking the retail price of the car, double damages, interest, additional damages of $1,500, as well as costs, disbursements and reasonable attorney's fees. Soonafter, on a petition by Ford, the case was removed to federal court.

## II. Discussion

Section 218.015, titled "Repair, replacement and refund under new motor vehicle warranties," was enacted in 1983 and amended in 1986. The original law was in force during the times relevant to this suit. Subsection (2) of the original law reads, in part,

(2)(a) If a new motor vehicle does not conform to an applicable express warranty and the consumer reports the nonconformity to the manufacturer or any of its authorized motor vehicle dealers and makes the motor vehicle available for repair before the expiration of the warranty or one year after first delivery of the motor vehicle to a consumer, whichever is sooner, the nonconformity shall be repaired.

(b) If after a reasonable attempt to repair the nonconformity cannot be repaired, the manufacturer shall, at the direction of the consumer, either replace the motor vehicle with a comparable new motor vehicle or accept return of the motor vehicle and refund the full purchase price plus any amounts paid by the consumer at the point of sale and all collateral costs associated with the repair of the nonconformity less a reasonable allowance for use to the consumer and any holder of a perfected security interest in the motor vehicle, as their interests may appear.

The following definitions were included under subsection (1).

(f) "Nonconformity" means a condition or defect which substantially impairs the use, value or safety of a motor vehicle, and is covered by an express warranty applicable to the motor vehicle, but does not include a condition or defect which is the result of abuse, neglect or unautho-

rized modification or alteration of the motor vehicle by the consumer.

(g) "Reasonable allowance for use" means an amount attributable to a consumer's use of a motor vehicle, but does not include any period after the consumer's first report to the manufacturer or any of its authorized motor vehicle dealers of a nonconformity with an express warranty applicable to the motor vehicle during which the motor vehicle is out of service due to the nonconformity.

(h) "Reasonable attempt at repair" means any of the following occurring within the term of an express warranty applicable to a new motor vehicle or within one year after first delivery of the motor vehicle to a consumer, whichever is sooner:

1. The same nonconformity with the warranty is subject to repair by the manufacturer or any of its authorized motor vehicle dealers at least 4 times and the nonconformity continues.

2. The motor vehicle is out of service for an aggregate of at least 30 days because of warranty nonconformities.

The Kletziens move for summary judgment, arguing that the undisputed evidence shows the car was out of service at least four times for mechanical defects relating to the drivetrain portion of the car and the car was out of service over 30 days for warranty defects. Ford, in its motion for summary judgment, argues that (1) there are no existing defects in the car, (2) the car was not subject to at least four repairs for the same nonconformity, and (3) the vehicle was not out of service for an aggregate of 30 days during the warranty period.

Rule 56, Fed.R.Civ.P., provides that summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Black v. Henry Pratt Company,* 778 F.2d 1278, 1281 (7th Cir. 1985). The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact. *Egger v. Phillips,* 710 F.2d 292, 296

(7th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). The Court must review the entire record with all reasonable inferences drawn from it taken in a light most favorable to the non-moving party. *Reardon v. Wroan,* 811 F.2d 1025, 1027 (7th Cir.1987).

### A. Analysis of the Statute

■ The Court begins with an analysis of section 218.015. The Court notes that this analysis is essentially one of first impression. Research of both parties, as well as the Court, has revealed no Wisconsin case law on the subject. Of course the Court is guided by the established rules of construction, including the principle that the courts are the final authorities on issues of statutory construction. *Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981).

Recovery under the statute is provided in both subsection (2)(a) and (2)(b). Subsection (2)(a) requires repair of a nonconformity; (2)(b) provides for replacement of the car or refund, plus other amounts. Recovery under (b) comes, "If after a reasonable attempt to repair[,] the nonconformity cannot be repaired,...." Both "reasonable attempt to repair" and "nonconformity" are defined in the statute. "Reasonable attempt to repair" means either (1) the same nonconformity is subject to repair at least four times "and the nonconformity continues" or (2) the motor vehicle is out of service for at least 30 days because of warranty non-conformities. "Nonconformity" is defined as a "condition or defect which substantially impairs the use, value or safety of a motor vehicle...."

Thus, at first glance, recovery under subsection (2)(b) would require:

1. A reasonable attempt to repair, shown by either (a) at least four repairs as to the same nonconformity and the nonconformity continues, or (b) the car is out of service for at least 30 days because of warranty nonconformities; and
2. The nonconformity cannot be repaired.

However, the second requirement does not fit squarely with sub (b) of the first. The Kletziens argue that since sub (b) does not require continued nonconformity, the requirement is not necessary under the main recovery provision, subsection (2)(b) of 218.015. That is, recovery is provided for repeated service on a problem still unrepaired *or* for an aggregation of problems requiring the car to be out of service for at least 30 days. Ford counters that an existing defect is necessary to any recovery.

A Wisconsin Legislative Council Staff Memorandum, dated April 4, 1983, and written by Senior Staff Attorney Russ Whitesel, supports the Kletziens' position. The memorandum "provides a description of Assembly Substitute Amendment 1," the bill's form before passage. That memorandum states,

> 5. The definition of "reasonable attempt to repair" in the Substitute Amendment is similar to that included in the original Bill. This definition [s. 217.-015(1)(8) in the Substitute Amendment] clarifies that the consumer is entitled to either replacement or a refund if the nonconformity with the warranty cannot be repaired by either the manufacturer or any authorized motor vehicle dealer after *four attempts* within the term of an express warranty or within one year after first delivery of the motor vehicle to a consumer, whichever is sooner. The Substitute Amendment also clarifies that a consumer is entitled to either replacement or refund if the motor vehicle is *out of service* during that period for an aggregate of *at least 30* days because of warranty of nonconformities.

Memorandum at 3–4. (Emphasis in original.) Senior Staff Attorney Whitesel gave this same interpretation in an April 28, 1986, "Information Memorandum" regarding the 1986 revisions in the law.

In *Qasem v. Kozarek,* 716 F.2d 1172, 1177 (1983), the Seventh Circuit gave the following guidelines on statutory construction:

> Under Wisconsin law when a statute is ambiguous it is appropriate to look to matters outside the face of the statute to

determine the intent of the legislature. *See State v. Stepniewski*, 105 Wis.2d 261, 268, 314 N.W.2d 98, 101 (1982). Where one of several interpretations of a statute is possible, the legislative intent is ascertained from the language of the statute in relation to its context, subject matter, scope, history and the object intended to be accomplished. *Terry v. Mongin Insurance Agency*, 105 Wis.2d 575, 584, 314 N.W.2d 349, 353–54 (1982).

Although the memoranda of a senior staff attorney may sometimes be of dubious value in determining legislative intent, the Court finds them the only guidance available in determining whether the legislature intended recovery in at least 30 days of aggregate service regardless of whether the nonconformity can be repaired.

The Court finds that under section 218.015, relief is afforded if the vehicle has been out of service at least 30 days within one year of delivery or the term of an express agreement.

### B. Application of the Statute

█ On the basis of the affidavits, it does not appear that the Kletziens' car required repair of a condition or defect four times without success, entitling them to summary judgment. On the other hand, the affidavits create a material issue of fact as to the number of days the car was under repair at Brantmeier Ford. Mr. Kletzien's affidavit avers that the vehicle was out of service for a total of 63 days (including six days in Eagle River). The affidavit of Mr. Bertram avers the car was out of service 24 days (22 if one counts the business days, but not counting the Eagle River days.) The summary judgment motions of both parties are denied.

### C. Other Issues

█ Ford also asks the Court to make a determination as to what constitutes a "day" under the statute. Ford argues that only business days should be considered, not weekends or holidays, including times when the service department was not open.

The plain words of section 218.015(1)(h) in no way limit how "days" should be counted. Furthermore, nothing in the legislative memoranda indicates an intention to limit "30 days" to "30 business days" or "30 non-weekend days" or "30 non-holiday days." If the vehicle was out of service for an aggregate of at least 30 days within the specified time periods, recovery under the provisions is appropriate.

Ford also requests that the Court clarify what damages are available under the statute. Ford anticipates that the Kletziens will ask for the purchase price of the car as recovery for "pecuniary loss" under subsection 218.015(7). That subsection provides:

> In addition to any other remedies a consumer damaged by a violation of this section may bring an action for twice the amount of any pecuniary loss together with costs and disbursements and reasonable attorney fees and for equitable relief determined by the court.

Since subsection (2)(b) already provided for refund of the full purchase price of the car or for replacement, the Court does not see how the amount paid for the car, if returned, can amount to a "pecuniary loss," except perhaps with regard to interest on the amount. However, the Kletziens, in their brief, did not address the issue of what they may ask for under "pecuniary loss." As such, the Court reserves judgment on that issue at this time.

### III. Summary

Accordingly, the cross-motions for summary judgment are hereby DENIED. To schedule further proceedings on this matter the Court will hold a status report on *Thursday, October 1, 1987 at 9:15 a.m.* in Courtroom 390 of the Federal Building, 517 East Wisconsin Avenue, Milwaukee, Wisconsin.