Henry A. HARTLAUB and Marie Hartlaub,
Plaintiffs-Respondents,

v.

COACHMEN INDUSTRIES, INC., Defendant-
Appellant,

HORN'S SALES & SERVICE, INC., Defendant.

Court of Appeals

*No. 87–0668. Argued December 17, 1987.—Decided March 2,
1988.*
(Also reported in 422 N.W.2d 869.)

On behalf of the defendant-appellant, there were briefs by *Harry G. Holz, Robert L. Titley,* and *James Brennan* of *Quarles & Brady* of Milwaukee, with oral argument by *Robert L. Titley.*

On behalf of the plaintiffs-respondents, there were briefs by *Patrick A. Dewane, Jr.* of *Dewane, Dewane & Kummer* of Manitowoc, with oral argument by *Patrick A. Dewane, Jr.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   Henry and Marie Hartlaub brought this action against Coachmen Industries, Inc. pursuant to Wisconsin's Lemon Law, sec. 218.015, Stats. (1983–84).[1] A jury found Coachmen liable under

---

[1]Section 218.015, Stats. (1983–84), was amended by 1985 Wis. Act 205. The 1983–84 version is applicable here. Therefore all references to sec. 218.015 will be to the 1983–84 statute.

The complaint also alleged causes of action for breach of express and implied warranties, deceptive advertising under sec. 100.18, Stats., and a violation of the federal Magnuson-Moss Warranty Act, 15 U.S.C. sec. 2301 *et seq.* The jury found that Coachmen did

the Lemon Law and Coachmen appeals. The issue turns upon the proper statutory construction of the Lemon Law. We conclude that the trial court correctly construed this statute. Therefore, we affirm the judgment.

## FACTS

The Hartlaubs purchased a 1984 Coachmen Ambassador recreational vehicle (RV) from Horn's Sales & Service, Inc., an authorized Coachmen dealer, on April 10, 1984. The Hartlaubs paid over $47,000 for the RV. The vehicle had a full one year warranty. The Hartlaubs began experiencing difficulties with their new RV on the way home from the dealership. They returned the vehicle for service on April 12. The Hartlaubs continued to experience a multitude of problems. Service repairs were again performed at Horn's on June 3 and 4.

The Hartlaubs took one major trip with their new RV, leaving June 20, 1984. On the trip through Canada and the United States, the generator did not charge, the windshield wipers on the driver's side did not work, the radio stopped playing, the cruise control worked only intermittently, the television quit playing, and the valve system on the sewage holding tank failed, causing sewage to be spilled as the Hartlaubs were traveling down the highway. A Canadian trooper

---

not breach any express and implied warranties, met the Magnuson-Moss requirements and did not engage in deceptive advertising.

The Hartlaubs' complaint also names Horn's Sales and Service, Inc., an authorized Coachmen dealer, as a defendant. The jury determined that Horn's was not liable to the Hartlaubs under the Lemon Law.

would not let the Hartlaubs leave the scene until the valve problem was fixed. In addition, a rear skid bar broke off, an awning installed on the RV by Horn's did not work properly, and a piece of sheet metal on the bottom of the RV broke off and was dragged down the roadway. Because of these problems, the Hartlaubs had to stop for repairs at several garages along the way.

The Hartlaubs returned from their trip on July 6, 1984 and again took the RV into Horn's on July 9. Upon leaving Horn's the same day, the radiator blew up. The RV was then towed to a Chevrolet dealership and was out of service for ten days. Later, the RV was again taken to Horn's for repairs on July 31 and August 22.

Dissatisfied with the repair work done by Horn's, the Hartlaubs, in September 1984, made arrangements with Coachmen to have all defects repaired at the Coachmen factory in Indiana. The RV was received by Horn's on Coachmen's behalf on October 9, and the RV was returned on November 8. However, new problems then surfaced. Once Mr. Hartlaub got the RV to his residence, neither the generator nor the engine would shut off. Also, the RV was equipped with a step that automatically extended whenever the door was opened. As Mr. Hartlaub exited the RV, the step failed to extend, causing Mr. Hartlaub to fall.

After November 8, 1984, the Hartlaubs parked the RV and did not drive it again. They did not request Coachmen or Horn's to repair these new defects. In January 1985, the Hartlaubs purchased a new RV, receiving $22,000 as a trade-in allowance on the Coachmen RV.[2] Altogether, from April 10, 1984 to

---

[2]When the Hartlaubs traded in their RV, the National Automobile Dealers Association values for that unit, as equipped, were $28,930 wholesale and $36,290 retail.

November 8, 1984, the RV was out of service for a total of forty-five days.

## THE LEMON LAW

## SECTION 218.015, STATS.

Section 218.015, Stats., reads in part:

(1) In this section:

. . . .

(f) "Nonconformity" means a condition or defect which substantially impairs the use, value or safety of a motor vehicle, and is covered by an express warranty applicable to the motor vehicle, but does not include a condition or defect which is the result of abuse, neglect or unauthorized modification or alteration of the motor vehicle by a consumer.

. . . .

(h) "Reasonable attempt to repair" means any of the following occurring within the term of an express warranty applicable to a new motor vehicle or within one year after first delivery of the motor vehicle to a consumer, whichever is sooner:

1. The same nonconformity with the warranty is subject to repair by the manufacturer or any of its authorized motor vehicle dealers at least 4 times and the nonconformity continues.

2. The motor vehicle is out of service for an aggregate of at least 30 days because of warranty nonconformities.

(2) (a) If a new motor vehicle does not conform to an applicable express warranty and the consumer reports the nonconformity to the manufacturer or any of its authorized motor vehicle dealers and makes the motor vehicle available for repair before the expiration of the warranty or one year after first delivery of the motor vehicle to a

consumer, whichever is sooner, the nonconformity shall be repaired.

(b) If after a reasonable attempt to repair the nonconformity cannot be repaired, the manufacturer shall, at the direction of the consumer, either replace the motor vehicle with a comparable new motor vehicle or accept return of the motor vehicle and refund the full purchase price plus any amounts paid by the consumer at the point of sale and all collateral costs associated with the repair of the nonconformity less a reasonable allowance for use to the consumer and any holder of a perfected security interest in the motor vehicle, as their interests may appear.

Coachmen argues that the manufacturer cannot be held liable when a vehicle is out of service for thirty days if, after repairs, the vehicle is free from nonconformities and the consumer accepts the vehicle. Coachmen also contends that because it repaired virtually all reported defects and any alleged defects that remained did not constitute "nonconformities," it has no liability under sec. 218.015, Stats. The Hartlaubs, on the other hand, contend that since the RV was out of service for over thirty days with assorted nonconformities, Coachmen is liable under the Lemon Law.

These issues require us to interpret sec. 218.015, Stats. Statutory construction presents a question of law, a matter decided without deference to the conclusion of the trial court. *State ex rel. Smith v. City of Oak Creek,* 139 Wis. 2d 788, 795, 407 N.W.2d 901, 904 (1987). The primary source for construction of a statute is the language of the statute itself. *Id.*

Section 218.015(2)(b), Stats., requires that a "reasonable attempt to repair" occur before a manufacturer must either replace the vehicle or accept return of the vehicle and refund the purchase price. Section 218.015(1)(h) sets forth two circumstances, either of which constitutes a reasonable attempt to repair: (1) four attempted repairs on the same nonconformity and the nonconformity continues to exist *or* (2) the motor vehicle was out of service a minimum of thirty days because of various attempts to repair warranty nonconformities.

The first circumstances, four attempted repairs on the same nonconformity, is not established by the facts of this case. However, the record clearly shows that the Hartlaubs' RV was out of service for more than thirty days due to assorted warranty nonconformities. Therefore, the second circumstance of sec. 218.015(1)(h), Stats., is implicated under the facts of this case.

Coachmen argues, however, that all reported defects had been repaired. Coachmen notes that sec. 218.015(2)(b), Stats., requires not only "a reasonable attempt to repair," but also that "the nonconformity cannot be repaired" before the manufacturer is required to replace the vehicle or accept return of the vehicle and refund the purchase price. Stated otherwise, Coachmen contends that if nonconformities are eventually repaired and the consumer accepts the vehicle, the manufacturer's duties under the statute are not triggered, even if the vehicle is out of service for more than thirty days.

If our inquiry were limited solely to subsec. (2)(b), we might well be persuaded by Coachmen's argument because, as already noted, this subsection required *both* "a reasonable attempt to repair" *and* "the

798

nonconformity cannot be repaired" as components of the consumer's right to recover. We, however, must read the statute in its totality. Comparing the subsec. (2)(b) components of the consumer's right to recover and the subsec. (1)(h) definition of "reasonable attempt to repair," the resolution of this issue is not as clear as Coachmen contends.

Subsection (1)(h)2 defines a "reasonable attempt to repair" as a motor vehicle being out of service for an aggregate of at least thirty days because of warranty nonconformities. However, in such a case, Coachmen argues that liability to the manufacturer nonetheless does not attach because the second prong of the (2)(b) test for recovery—"the nonconformity cannot be repaired" requirement—has not been met.

We conclude that reasonable persons could differ whether subsecs. (1)(h)2 and (2)(b), when read together, require proof of the additional subsec. (2)(b) fact that the nonconformity cannot be repaired when the gravamen of the action is that the vehicle has been out of service for an aggregate of at least thirty days because of warranty nonconformities. The language and structuring of these subsections make the statute not only ambiguous, but also arguably inconsistent.

Other courts have recognized this same difficulty when attempting to reconcile the "nonconformity cannot be repaired" element with the "reasonable attempt to repair" element when the vehicle has been out of service for at least thirty days because of warranty nonconformities. *See Kletzien v. Ford Motor Co.,* 668 F. Supp. 1225, 1228 (E.D. Wis. 1987).

When a statute is found to be ambiguous, rules of construction require us to look at the statutory context, subject matter, scope, history and object to be

accomplished. *Id.* at 1229. Furthermore, a statute should be construed to give effect to its leading idea and the entire statute should be brought into harmony with the statute's purpose. *State v. Clausen,* 105 Wis. 2d 231, 244, 313 N.W.2d 819, 825 (1982). Also, remedial statutes should be liberally construed to suppress the mischief and advance the remedy which the statute intended to afford. *City of Madison v. Hyland, Hall & Co.,* 73 Wis. 2d 364, 373, 243 N.W.2d 422, 427 (1976).

With these statutory construction principles in mind, we conclude that repair of reported nonconformities does not defeat a purchaser's right to recovery under Wisconsin's Lemon Law where it is otherwise established that the vehicle has been out of service for at least thirty days because of warranty nonconformities pursuant to sec. 218.015(1)(h)2, Stats.

As to legislative history, we observe that a Wisconsin Legislative Council Staff Memorandum, dated April 4, 1983, and written by Senior Staff Attorney Russ Whitesel, supports our conclusion. The memorandum "provides a description of Assembly Substitute Amendment 1," the bill's form before passage. That memorandum states:

> 5. The definition of "reasonable attempt to repair" in the Substitute Amendment is similar to that included in the original Bill. This definition [s. 218.015(1)(h) in the Substitute Amendment] clarifies that the consumer is entitled to either replacement or a refund if the nonconformity with the warranty cannot be repaired by either the manufacturer or any authorized motor vehicle dealer after *four attempts* within the term of an express warranty or within one year after first delivery of the motor vehicle to a consumer, whichever is

sooner. The Substitute Amendment also clarifies that a consumer is entitled to either replacement or refund if the motor vehicle is *out of service* during that period for an aggregate of *at least 30* days because of warranty of [sic] nonconformities.

Memorandum at 3–4. [Emphasis in original.]

■

As to the statutory context, the legislature defined two circumstances in which a "reasonable attempt to repair" can exist. The first (not germane to the facts of this case) is where at least four repairs as to the same nonconformity are made *and the nonconformity continues.* Sec. 218.015(1)(h)1, Stats. The other (applicable to this case) is where the vehicle has been out of service for an aggregate of at least thirty days because of warranty nonconformities. Sec. 218.015(1)(h)2. Notably, the legislature did not include in this latter circumstance the requirement for continuation of the nonconformity as it did in the former. This supports our conclusion that a continuation of prior nonconformities is not essential to recovery under the Lemon Law where the gravamen of the complaint is that the vehicle has been out of service pursuant to subsec. (1)(h)2.

■

As to legislative object, Wisconsin's Lemon Law is obviously remedial in nature. As such, we should construe the statute with a view towards the social problem which the legislature was addressing when enacting the law. *Hyland,* 73 Wis. 2d at 373, 243 N.W.2d at 427. This is all the more true when, as here, the statute is ambiguous. Were Coachmen's argument to prevail, a vehicle with innumerable warranty defects could be out of service repeatedly but with no right of recovery to the purchaser if the nonconformi-

ties were repaired within thirty days on a successive basis. We do not see this as within the legislative scheme of things given the object of the legislation. *Hemerley v. American Family Mut. Ins. Co.*, 127 Wis. 2d 304, 307, 379 N.W.2d 860, 862 (Ct. App. 1985). As the trial court succinctly stated:

> Under the lemon law, the manufacturer has either four chances to repair the same defect or an aggregate of 30 days to repair all defects. If a manufacturer cannot correct the defects within these time limits, there is no requirement for the purchaser to give the manufacturer one more chance to transform itself into Mr. Goodwrench.[3]

To hold otherwise would, we conclude, eviscerate the law.[4]

---

[3]The federal district court in *Kletzien v. Ford Motor Co.*, 668 F. Supp. 1225 (E.D. Wis. 1987), encountered the same dilemma in attempting to reconcile the "nonconformity cannot be repaired" element with the "reasonable attempt to repair" element when the vehicle has been out of service for at least thirty days because of warranty nonconformities under Wisconsin's Lemon Law. The district court concluded that the "nonconformity cannot be repaired" requirement "does not fit squarely" with the "reasonable attempt to repair" requirement. *Id.* at 1228. Therefore, the district court concluded that relief under the Lemon Law is afforded if the vehicle has been out of service for at least thirty days within one year of delivery or the term of an express agreement. *Id.* at 1229.

[4]Coachmen also argues that its liability is improperly invoked under a definitional section of sec. 218.015, Stats. The legislature drafted sec. 218.015 in such a way that the remedy subsection, sec. 218.015(2)(b), invokes subsec. (1)(h) to define "reasonable attempt to repair." By necessity, then, one has to move to subsec. (1)(h) to determine whether liability will attach. There is nothing improper in this process.

## DAMAGES

█ Next, Coachmen asks for a new trial on damages. The jury awarded the Hartlaubs $25,081 in compensatory damages for the sec. 218.015, Stats., violation. The trial court doubled this award and also awarded attorney's fees and costs pursuant to sec. 218.015(7), which provides:

> (7) In addition to any other remedies, a consumer damaged by a violation of this section may bring an action for twice the amount of any pecuniary loss, together with costs and disbursements and reasonable attorney fees, and for equitable relief determined by the court.

Coachmen argues that the jury, rather than the court, must make the determination whether these added statutory awards should be allowed. We disagree, concluding that the statute is clear and unambiguous despite its failure to expressly state *who* makes the determination of double damages, costs, disbursements and reasonable attorney's fees.

---

Coachmen also raises collateral issues regarding the correctness of the jury instructions and the form of the special verdict. These issues, however, are controlled by the larger question involving the construction of sec. 218.015, Stats. Our conclusion that the trial court correctly construed the statute also brings us to conclude that the trial court correctly instructed the jury and framed the special verdict. Moreover, we have searched the record and are unable to find an objection by Coachmen to either the jury instructions or the special verdict form. Therefore these objections are waived. *Gerdmann v. United States Fire Ins. Co.,* 119 Wis. 2d 367, 372, 350 N.W.2d 730, 734 (Ct. App. 1984); *Clark v. Leisure Vehicles, Inc.,* 96 Wis. 2d 607, 616, 292 N.W.2d 630, 634 (1980).

The Hartlaubs' complaint requested a damage award under the very language of this statute. The Hartlaubs' right to recovery under the Lemon Law was contingent upon proving a violation of the statute and resultant pecuniary loss. This they did. A party does not *prove* multiple or double damages. Rather, such damages are imposed for punitive purposes. *Sprague v. Sprague,* 132 Wis. 2d 68, 72, 389 N.W.2d 823, 824 (Ct. App. 1986).

The jury determined that Coachmen had violated the statute and that the Hartlaubs had incurred pecuniary loss. As such, the additional damage provisions of sec. 218.015(7), Stats., were triggered by operation of law. Such function is properly performed by the trial court—not the finder of fact.

Coachmen also contends that the trial court erred in failing to instruct the jury that, in awarding damages, it should consider the "reasonable allowance for use" of the vehicle by the Hartlaubs, pursuant to sec. 218.015(2)(b), Stats. We have searched the record and are unable to find any objection by Coachmen to either the jury instructions or the special verdict form as to these or any other matters. Therefore, this issue is waived. *Gerdmann v. United States Fire Ins. Co.,* 119 Wis. 2d 367, 372, 350 N.W.2d 730, 734 (Ct. App. 1984); *Clark v. Leisure Vehicles, Inc.,* 96 Wis. 2d 607, 616, 292 N.W.2d 630, 634 (1980).

Finally, Coachmen asks for a new trial in the interests of justice pursuant to sec. 752.35, Stats., on the grounds that the real controversy has not been fully tried. Again, this argument is premised upon the correctness of Coachmen's interpretation of the Lemon Law. We have rejected Coachmen's interpretation

804

and therefore we see no basis for exercising our discretionary reversal powers under sec. 752.35.

*By the Court.*—Judgment affirmed.