John L. HUGHES, Plaintiff-Respondent,

v.

CHRYSLER MOTORS CORPORATION, Defendant-Appellant-Petitioner.

Supreme Court

*No. 93–0208. Oral argument September 5, 1995.—Decided January 17, 1996.*

(Also reported in 542 N.W.2d 148.)

For the defendant-appellant-petitioner there were briefs by *Jeffrey S. Fertl, Susan R. Tyndall* and *Hin-*

*shaw & Culbertson*, Milwaukee and oral argument by *Jeffrey S. Fertl*.

For the plaintiff-respondent there was a brief by *Edward Grutzner, Christofer C. Helwig* and *Grutzner, Holland & Vollmer, S.C.*, Beloit and oral argument by *Edward Grutzner*.

Amicus curiae brief was filed by *Lawrence Alan Towers*, Milwaukee for The Center for Public Representation.

Amicus curiae brief was filed by *Dorothy H. Dey* and *Quale, Feldbruegge, Calvelli, Thom & Croke, S.C.*, Milwaukee for the American Manufacturers Association and Association of International Automobile Manufacturers.

WILLIAM A. BABLITCH, J.   Mr. Hughes bought a new car in 1990. It was, unfortunately, a lemon, a fact admitted by all parties. After the manufacturer failed to respond within the time limits set by law, Mr. Hughes sued the manufacturer, Chrysler, seeking among other things the amount of money he paid for the van as pecuniary damages. Under Wisconsin's "lemon law," any pecuniary damages awarded to a successful plaintiff are doubled. Chrysler argues that the purchase price of the car to the consumer is not a pecuniary damage within the meaning of the lemon law. We disagree. One purpose of the law, among others, is to provide an incentive for a manufacturer to put the purchaser of a new car back to the position the purchaser thought he or she was in at the time they bought the car. We conclude that the legislature intended to include the purchase price of the car to the consumer as pecuniary damages. Accordingly, we affirm.

The facts are not in dispute. Hughes purchased a new Dodge Caravan on January 11, 1990. During his

first year of ownership, Hughes took the vehicle to a dealer to repair transmission defects on seven separate occasions. Hughes retained counsel after the repair efforts proved to be unsuccessful. On June 19, 1991, Hughes' counsel wrote to CT Corporation Systems, Chrysler's registered agent in Wisconsin, and demanded that Chrysler replace Hughes' car within 30 days with a "comparable new motor vehicle" without any further charge to him. Wisconsin Stat. § 218.015(2)(b)2.a and (c).

Having received no response within the 30 days provided by the statute, Hughes' counsel contacted Chrysler on July 29, 1991, and at Chrysler's request, mailed a copy of the June 19 demand letter. After Chrysler received a copy of the letter, Chrysler attempted to reach Hughes' counsel by telephone before discovering that Hughes had filed suit on August 22, 1991. On August 23, 1991, Chrysler sent Hughes a letter offering to replace his vehicle without any charge for a model year upgrade or the mileage on his vehicle.

The circuit court granted Hughes' motion for summary judgment. The court then entered judgment for Hughes in the amount of $74,371, which included double the amount he paid for the vehicle, attorney fees, and prejudgment interest. The court of appeals affirmed the circuit court. We granted Chrysler's petition for review.

The first issue is whether the purchase price of the car to the consumer is pecuniary damages within the meaning of Wisconsin's so-called lemon law, Wis. Stat. § 218.015(7) (1993-94), the relevant part of which is

cited below.[1] Statutory construction is a question of law which this court decides de novo without deference to the decisions of the lower courts. *Eby v. Kozarek*, 153 Wis. 2d 75, 79, 450 N.W.2d 249 (1990). "The cardinal rule in all statutory interpretation, as this court has often said, is to discern the intent of the legislature." *Scott v. First State Ins. Co.*, 155 Wis. 2d 608, 612, 456 N.W.2d 152 (1990). This court ascertains that intent by examining the language of the statute and the scope, history, context, subject matter and purpose of the statute. *Id*; *see also Voss v. City of Middleton*, 162 Wis. 2d 737, 749, 470 N.W.2d 625 (1991). We are also aware that remedial statutes should be liberally construed to suppress the mischief and advance the remedy that the statute intended to afford. *Madison v. Hyland, Hall & Co.*, 73 Wis. 2d 364, 373, 243 N.W.2d 422 (1976).

Chrysler argues that a buyer's pecuniary loss is limited to the buyer's out-of-pocket expenses that were caused by the manufacturer's violation of the statute. Hughes disagrees. He argues that pecuniary loss within the meaning of the lemon law includes the purchase price of the car. Hughes contends that allowing the consumer to recover double the purchase price of the automobile effectuates the purposes of the lemon law and strengthens the rights of consumers in dealing with vehicle defects. We agree.

---

[1] All future statutory references are to the 1993-94 volume unless otherwise indicated. Wisconsin Stat. § 218.015(7) states:

> In addition to pursuing any other remedy, a consumer may bring an action to recover for any damages caused by a violation of this section. The court shall award a consumer who prevails in such an action twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees, and any equitable relief the court determines appropriate.

The statute is silent as to whether pecuniary loss includes the purchase price of the vehicle. To determine the legislative intent behind the statute, we first examine the history of lemon laws in general. Lemon laws were enacted to deal with the increasing number of disputes between manufacturers and consumers over automobile warranties. Joan Vogel, *Squeezing Consumers: Lemon Laws, Consumer Warranties, and a Proposal for Reform*, 1985 Ariz. St. L.J. 589, 589. Warranty disputes were directly responsible for a considerable amount of litigation and have led to numerous legislative proposals. *Id.* The underlying reason for such legislation was clear. Harold Greenberg, *The Indiana Motor Vehicle Protection Act of 1988: The Real Thing For Sweetening the Lemon or Merely a Weak Artificial Sweetener?*, 22 Ind. L. Rev. 57, 57 (1989). For the average person, the purchase of an automobile was one of the most important of all consumer purchases in terms of significance and price. *Id.* However, for thousands of purchasers each year, this highly significant purchase became a virtual nightmare when the automobile refused to function properly, and the seller was unable, or unwilling to take action to remedy the situation. Julian B. Bell III, *Ohio's Lemon Law: Ohio Joins the Rest of the Nation in Waging War Against the Automobile Limited Warranty*, 57 U. Cin. L. Rev. 1015, 1015 (1989).

Prior to the enactment of lemon laws, the only kinds of remedial relief available to consumers were the statutory remedies of revocation of acceptance and breach of warranty under the Uniform Commercial Code. *See* Wis. Stat. §§ 402.313; 402.602; 402.608. Federal remedies also existed through the Magnuson-Moss Federal Warranty Act. *See* 15 U.S.C. §§ 2301-2312 (1982). These state and federal remedies, however, did

not adequately protect the interests of the consumer in a typical lemon vehicle claim. Clifford P. Block, *Arkansas's New Motor Vehicle Quality Assurance Act — A Branch of Hope for Lemon Owners*, 16 U. Ark. Little Rock L. J. 493, 493 (1994). Purchasers of defective cars had no recourse other than to repeatedly bring their cars in for repairs.

The problems faced by the automobile consumer were accurately described in the following comments made at the hearings on a proposed federal Automobile and Warranty Repair Act:

> I think there is probably no subject of more . . . emotional concern and irritation, frustration, aggravation and outrage than the question of the automobile that does not work. When the consumer buys the car he thinks he is getting a car that will drive and that will service him. He thinks his warranty is going to mean that if anything goes wrong it will be fixed up well and promptly. The fact is that in all too many cases this does not happen . . . .

Automobile Warranty and Repair Act: Hearings on H.R. 1005 before the Subcomm. on Consumer Protection and Finance of the House Comm. on Interstate and Foreign Commerce, 96th Cong., 1st Sess. 1 (1979) (introductory remarks of Rep. James H. Scheuer, Subcommittee Chairman); *see also* Greenberg at 57. By 1993, 48 states, including Wisconsin, had lemon laws available as remedial assistance to consumers who purchased defective new automobiles. *See* Block at 493.

Wisconsin's lemon law, Wis. Stat. § 218.015, became effective on November 3, 1983. Prior to its passage, Wisconsin consumers relied on the same inadequate, uncertain and expensive remedies of the Uniform Commercial Code or the Magnuson-Moss

Warranty Act. Stephen J. Nicks, *Lemon Law II*, Wis. Bar Bulletin, Vol. 60, No. 7, July 1987, at 8. Wisconsin's lemon law provides that if a new motor vehicle does not conform to an applicable express warranty, the nonconformity shall be repaired before the expiration of the warranty or one year after delivery of the vehicle, whichever is sooner. Section 218.015(2)(a). If the nonconformity is not repaired after a reasonable attempt to repair, the manufacturer must accept return of the vehicle, and at the direction of the consumer, either replace the vehicle or refund to the consumer the full purchase price plus any sales tax, finance charge, costs, less a reasonable allowance for use. Section 218.015(2)(b)1 and 2. A reasonable attempt to repair means either that the nonconformity is subject to repair four times and the nonconformity continues or that the vehicle is out of service for an aggregate of at least 30 days because of warranty nonconformities. Section 218.015(1)(h)1 and 2.

The Wisconsin lemon law is violated when the manufacturer fails to voluntarily replace or repurchase the lemon vehicle within 30 days after receipt of the consumer's Wis. Stat. § 218.015(2)(c) demand. This failure to voluntarily comply with the lemon law establishes a violation of the law and triggers the § 218.015(7) remedies of the law. Section 218.015(7) provides that:

> The court shall award a consumer who prevails in such an action twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees, and any equitable relief the court determines appropriate.

Wisconsin's lemon law was created to be a self-enforcing consumer law that provides "important

rights to motor vehicle owners." Memorandum from Bronson C. La Follette, Attorney General, to Members of the Legislature, Re: AB 434, Auto "Lemon Law" Changes, Oct. 14, 1985, Wis. Act 205. The intent behind the law was to "improve auto manufacturers' quality control . . . [and] reduce the inconvenience, the expense, the frustration, the fear and [the] emotional trauma that lemon owners endure." Statement by Vernon Holschbach, co-sponsor of the bill, *"Lemon" Car Bill Has Sweet, Sour Sides*, Wisconsin State Journal, March 2, 1983. In *Hartlaub v. Coachmen Ind., Inc.*, 143 Wis. 2d 791, 422 N.W. 2d 869 (Ct. App. 1987), the court of appeals stated that, "[a]s to legislative object, Wisconsin's Lemon Law is obviously remedial in nature. As such, we should construe the statute with a view towards the social problem which the legislature was addressing when enacting the law." *Id.* at 801.

In the 1985-86 legislative session, Wis. Stat. § 218.015(7) was amended to make the award of double damages and reasonable attorney fees mandatory rather than discretionary. Nicks, *Lemon Law II* at 11. In the initial section, the statute stated that a consumer "may bring an action for twice the amount of any pecuniary loss . . . ." *Id.* The amended language states that the "court *shall* award a consumer who prevails . . . twice the amount of any pecuniary loss . . . ." Section 218.015(7) (1985)(emphasis added). This amendment clarified that when a consumer prevails in a court action under the lemon law, the court must award double damages and attorney fees.

Based on this history, we conclude that the legislature intended to include the purchase price of the car as pecuniary damages. We come to this conclusion for the following reasons.

First, if we accept Chrysler's definition of pecuniary loss, then the remedy provided by the statute does not significantly improve upon those remedies available to the consumer before the enactment of the lemon law. *See* the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312. Certainly the law is intended to do more than simply parrot the remedies previously available to the consumer.

Second, by including the purchase price of the car as part of the pecuniary loss, the statute provides an incentive to the manufacturer to promptly resolve the matter by making it far more costly to delay. If the only damages available were out of pocket costs, the statute would provide scant incentive to move with dispatch. The imposition of double damages as punishment for a failure to comply with the statute provides the necessary incentive.

> Another reason to allow double or triple damages is to persuade manufacturers to settle legitimate warranty disputes so that consumers are not forced to litigate. The manufacturer will have to consider more carefully the costs of litigating the dispute when there is the prospect of double damages as well as attorney's fees and other costs.

Vogel, *Squeezing Consumers* at 662 (discussing the importance of Wisconsin's lemon law as the only lemon law to allow for the recovery of double damages).

Third, a potential recovery must be large enough to give vehicle owners the incentive to bring suits against these corporations. Nicks, *Lemon Law II* at 48. The threat of double damages increases the bargaining power of individual consumers.

> These corporations not only have the wealth and will to exhaust an individual litigant, but also con-

trol vast amounts of technical expertise on the very mechanical aspects the consumer is challenging. Without the sweetener of double damages in a sufficient amount and reasonable attorneys' fees, few consumers would bring such actions.

*Id.* at 48.

The only case to address the appropriate measure of damages under Wis. Stat. § 218.015(7) is *Nick v. Toyota Motor Sales*, 160 Wis. 2d 373, 466 N.W.2d 215 (Ct. App. 1991). The issue in *Nick* was whether the term "pecuniary loss" included the purchase price of the consumer's vehicle. The court of appeals held that pecuniary loss included the amount of the purchase price he actually paid, whether by down payment or loan payments. *Id.* at 383.

The *Nick* rule produces anomalous results depending on whether a consumer borrows money to buy a car or pays for the car entirely in cash. *See* Stephen J. Nicks, *A New Twist on the Lemon Law*, Wisconsin Lawyer, Oct. 1991 at 25. For example, if a consumer pays $20,000 in cash for a car and proves lemon law liability, *Nick* says that the pecuniary loss of that consumer is $20,000 which is then doubled as damages of $40,000. However, if this same consumer did not pay cash but merely gave a down payment of $2,000, *Nick* says the pecuniary loss would be $2,000 (the amount actually paid out by the consumer) and only that amount would be subject to doubling. The consumer would then recover double damages of $4,000. The secured creditor would receive the unpaid principal and any interest owed. The amount owing to the secured creditor would not be subject to doubling.

Therefore, calculating damages under *Nick* produces major double damage differences, depending on how the consumer paid for the vehicle. *Id.* Based on the

above example, the first consumer gets $40,000 ($20,000 doubled) and the second consumer gets $4,000 ($2,000 doubled).

*Nick* did not address this double damage disparity. However, under *Nick*'s rationale, a credit purchaser with little down payment or trade-in is in a significantly weaker position with respect to the manufacturer than is a consumer who pays the full purchase price of the vehicle. The converse is equally true. This result is inconsistent with the legislative goal of encouraging manufacturers to deal promptly and fairly with all purchasers of new vehicles. For that reason, any language in *Nick* contrary to our holding here that pecuniary loss includes the full purchase price of the vehicle to the consumer is overruled.

We realize that car manufacturers do not deliberately set out to manufacture a lemon. Quite the opposite. In fact, it is in their own best interest not to do so. However, an unfortunate fact of life, seemingly as inevitable as night following day, is that occasionally a "lemon" will slip through the line. And when that happens, another unfortunate fact of modern day life is that the cost to the unlucky consumer who purchases that "lemon" is far more than the cost of the car: interrupted, delayed, or even cancelled schedules; the time and the trouble, as well as the anxiety and stress that accompany those changes, the apprehensions that result every time the consumer gets back into that automobile wondering "what next?" Dependability is a prime objective of every new car buyer. When that is taken away, the loss is far greater than the cost of the car. It is this fact that the legislature recognized when they enacted the lemon law. Its principle motivation is not to punish the manufacturer who, after all, would

far prefer that no "lemons" escape their line. Rather, it seeks to provide an incentive to that manufacturer to promptly return those unfortunate consumers back to where they thought they were when they first purchased that new automobile.[2]

Chrysler makes one further argument. Chrysler contends that because it offered to give Hughes a new vehicle 35 days after the deadline, Hughes' pecuniary loss should be limited to the out-of-pocket expenditures Hughes made during those 35 days. We find no merit in this argument. If we were to accept Chrysler's approach, a manufacturer could routinely refuse to provide a replacement vehicle to a consumer in order to wait and see whether the consumer would actually file suit. The statute demands that a manufacturer respond within 30 days. Wisconsin Stat. § 218.015(2)(c). Chrysler did not respond within the 30 days required by the law. We will not rewrite the statute.

Given all the above, we hold that Hughes can recover double the amount of the purchase price of his automobile. This result is both consistent with the court of appeals' decision in *Nick* and consistent with the underlying purposes and goals of the lemon law.

Chrysler asks us to address one further issue: whether the circuit court erroneously exercised its discretion by awarding Hughes $35,141 in attorney's fees. Chrysler claims that Hughes' counsel spent an unrea-

_____

[2] In *Hartlaub v. Coachman Ind., Inc.*, 143 Wis. 2d 791, 422 N.W. 2d 869 (Ct. App. 1987), the court of appeals stated that the recovery of such "damages are imposed for punitive purposes." *Id.* at 804. Failure to comply, of course, results in the imposition of punishment. The consumer's pecuniary loss is doubled.

sonable amount of time on the case, and that the total amount billed by Hughes' counsel exceeded that charged by other attorneys doing similar work.

Appellate review of an award of attorney's fees is limited to whether the circuit court properly exercised its discretion. *Chmill v. Friendly Ford-Mercury*, 154 Wis. 2d 407, 412, 453 N.W.2d 197 (Ct. App. 1990). A circuit court properly exercises its discretion if it "employs a logical rationale based on the appropriate legal principles and facts of record." *Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 204, 496 N.W.2d 57 (1993) (citing *Petros v. City of Watertown*, 152 Wis. 2d 692, 696, 449 N.W.2d 72 (Ct. App. 1989)).

In this case, we conclude that the circuit court did not erroneously exercise its discretion by determining and awarding attorney fees. The circuit court made an exhaustive, detailed review of the fees as reflected in the record. Although we might decide otherwise, this determination is discretionary with the circuit court. A review of the extensive record made by the court as to this issue precludes us from finding an erroneous exercise of discretion. Accordingly, we affirm the court of appeals in all respects.

*By the Court.*—The decision of the court of appeals is affirmed.