Elmer T. SCHEY, Plaintiff-Appellant,

v.

CHRYSLER CORPORATION, a foreign corporation, and Frank Boucher Chevrolet, Inc., a Wisconsin corporation, Defendants-Respondents.†

Court of Appeals

*No. 98–1277. Submitted on briefs March 26, 1999.—Decided May 26, 1999.*

(Also reported in 597 N.W.2d 457.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Thomas J. Flanagan* of *Jastroch & LaBarge, S.C.* of Waukesha.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Gregory W. Lyons* and *Steven L. Strye* of *O'Neil, Cannon & Hollman, S.C.* of Milwaukee.

Before Snyder, P.J., Anderson and Mawdsley,[1] JJ.

ANDERSON, J.   The question to be decided in this appeal is whether a purchaser of a previously-owned motor vehicle may seek the remedies provided in § 218.015, STATS.—Wisconsin's so-called "Lemon Law"—if, at the time the vehicle is submitted for repair, it still has the manufacturer's warranty and is within one year of the first delivery date to a consumer. Elmer T. Schey appeals from a partial summary judgment dismissing his Lemon Law claims against the Chrysler Corporation and Frank Boucher Chevrolet, Inc. Regardless of the fact that his motor vehicle had been previously owned, Schey contends that § 218.015 still covers his vehicle because the statute requires only that when presented for repair the vehicle must still have a valid manufacturer's warranty or that one

[1] Circuit Judge Robert G. Mawdsley is sitting by special assignment pursuant to the Judicial Exchange Program.

year may not have transpired from the first delivery of the vehicle to a consumer. He argues that, in his case, both provisions are satisfied. We are not persuaded. We conclude that when creating § 218.015, the legislature did not intend for previously-owned vehicles to be covered; accordingly, we affirm the partial summary judgment.

It is undisputed that the 1995 Dodge Neon Schey purchased on January 22, 1996, was a used motor vehicle and, unfortunately, was also a "lemon." Previously, the Neon had been leased for approximately six months before it was returned to a dealership. The Neon was then purchased at an auto auction by Frank Boucher Chevrolet and designated as "used" and "as is" on the dealership's sale lot. At the time Schey purchased the Neon from Frank Boucher Chevrolet, the Neon had been driven 6713 miles.

Schey soon became aware that the Neon he purchased was, in fact, a "lemon." He brought the Neon to the dealership for service six times, but the transmission problems continued. All repairs were covered by the manufacturer's limited warranty. Understandably upset with his auto purchase, Schey requested that Chrysler give him a comparable new car in accordance with the Lemon Law. When Chrysler refused, Schey filed this lawsuit.

Chrysler moved for partial summary judgment on Schey's Lemon Law claim. It disputed whether Schey's vehicle was covered by the statute because the vehicle was previously owned when Schey purchased it. The circuit court agreed and granted Chrysler's motion. Schey appeals.

■

When reviewing a trial court's grant of partial summary judgment, we, like the trial court, apply the

standards set forth in § 802.08, STATS. *See Wisconsin Patients Compensation Fund v. Wisconsin Health Care Liab. Ins. Plan*, 200 Wis. 2d 599, 606, 547 N.W.2d 578, 580 (1996). Although we conduct our review without deference to the trial court, *see Gaertner v. Holcka*, 219 Wis. 2d 436, 445–46, 580 N.W.2d 271, 275 (1998), we nonetheless value the trial court's analysis, *see M&I First Nat'l Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 497, 536 N.W.2d 175, 182 (Ct. App. 1995).

The issue in this appeal, involving the interpretation and application of Wisconsin's Lemon Law found in § 218.015, STATS., presents a question of law which we review de novo. *See Wisconsin Patients Compensation Fund*, 200 Wis. 2d at 606, 547 N.W.2d at 580. When interpreting a statute, we seek to discern the legislative intent behind the statute. *See Lincoln Sav. Bank, S.A. v. DOR*, 215 Wis. 2d 430, 441, 573 N.W.2d 522, 527 (1998). To do this, we first consider the language of the statute. *See id.* If that language clearly and unambiguously sets forth the legislative intent, we will not look outside the statutory language to ascertain the intent. *See id.* A statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. *See State v. Sample*, 215 Wis. 2d 487, 495, 573 N.W.2d 187, 191 (1998). If a statute is ambiguous, we look to the scope, history, context, subject matter and object of the statute in order to ascertain legislative intent. *See id.*

We now turn to the statute in question, § 218.015(2)(a), STATS., or the Lemon Law.[2] Section 218.015(2)(a) requires that *new* motor vehicles which

---

[2] Section 218.015(2)(a), STATS., states the following:

do not conform to the manufacturer's warranty shall be repaired if the vehicle is presented for repair. Paragraph (2)(a) continues and sets forth the qualifications on the types of vehicles submitted for repairs which it applies to: the vehicle must have an unexpired manufacturer's warranty or one year must not have transpired after the first delivery of the motor vehicle to a consumer. In Schey's view, this statute applies to his Neon. He reasons that at the time of the Neon's repairs, his vehicle's warranty had not expired and less than one year had passed from the car's first delivery to a consumer, thus satisfying both of para. (2)(a)'s vehicle qualifications. He also argues that nowhere in this subsection does it state that it does not apply to previously-owned vehicles; on the contrary, the subsection only requires that a vehicle meet one of the two qualifications.

Chrysler disagrees and suggests that § 218.015(2)(a), STATS., applies only to new vehicles. In support of its position, Chrysler reasons that in addition to its general inclusion of new vehicles in § 218.015, the legislature expressly included two types of used vehicles—the demonstrator and executive vehicles. *See* § 218.015(1)(d).[3] Chrysler argues that if the legislature determined that these particular vehicles,

---

If a new motor vehicle does not conform to an applicable express warranty and the consumer reports the nonconformity to the manufacturer, the motor vehicle lessor or any of the manufacturer's authorized motor vehicle dealers and makes the motor vehicle available for repair before the expiration of the warranty or one year after first delivery of the motor vehicle to a consumer, whichever is sooner, the nonconformity shall be repaired.

[3] Section 218.015(1)(d), STATS., states:

"Motor vehicle" means any motor driven vehicle required to be registered under ch. 341 or exempt from registration under s. 341.05 (2), including a demonstrator or executive vehicle not titled

which are otherwise considered used vehicles, should be given protection under § 218.015, then the legislature intended to exclude all other used vehicles.

■

Based on the foregoing, we determine that reasonable persons could differ over whether § 218.015(2)(a), STATS., includes a previously-owned vehicle that otherwise meets the statute's qualifications. Once a statute is found to be ambiguous, the rules of construction require us to look at the statute's context, subject matter, scope, history and object it sought to accomplish. *See Hartlaub v. Coachmen Indus., Inc.*, 143 Wis. 2d 791, 799–800, 422 N.W.2d 869, 872 (Ct. App. 1988). Furthermore, we seek to construe the statute in a fashion that gives effect to its leading idea and brings the entire statute into harmony with the statute's purpose. *See id.* at 800, 422 N.W.2d at 872.

■

With these principles of statutory construction in mind, we conclude that § 218.015(2)(a), STATS., does not apply to previously-owned motor vehicles. First, we note that the purpose of the Lemon Law is to protect *new* motor vehicle purchasers. It has been stated: "One purpose of the law . . . is to provide an incentive for a manufacturer to put the purchaser of a *new* car back to the position the purchaser thought he or she was in at the time they bought the car." *Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 976, 542 N.W.2d 148, 149 (1996) (emphasis added). Purchasers of a new car think they are in a different position than one who purchases a previously-owned car. New car purchasers expect that the vehicle they receive is free from any defects. In fact, the Lemon Law's intent was to improve

or titled by a manufacturer or a motor vehicle dealer, which a consumer purchases or accepts transfer of in this state. . . .

the auto manufacturer's quality control, *see id.* at 982, 542 N.W.2d at 151, to ensure that new car purchasers indeed received what they expected—a defect-free car. On the other hand, purchasers of a previously-owned car think they are in a different position. They make the used car purchase assuming that they acquire the car "as is" or with any existing defects. Thus, the purpose of § 218.015(2)(a) does not support Schey's argument that previously-owned vehicles are included.

Second, we observe that the legislative history behind the statute's creation also supports our conclusion. The original version of the Lemon Law stated in broad terms that it applied to "motor vehicles." *See* § 218.015(1)(d), STATS., 1983–84. Later, this subsection was repealed and re-created. *See* 1985 Wis. Act .205, § 2. The drafting history of this 1985 Act is illuminating on the issue presently before us.

The drafting history reveals that the legislature considered adding the word "new" before every reference to a motor vehicle in § 218.015, STATS. This idea was rejected because the statute's drafters felt the statute already clearly expressed that the only vehicles it referred to were new ones. For example, a memorandum written during the drafting of the amendment to include demonstrator and executive vehicles in para. (1)(d) illustrates this point:

> I . . . do not feel it is absolutely necessary to replace "motor vehicle" by "new motor vehicle" throughout the statute. . . . After the vehicle has been driven by the consumer, it is no longer really "new" and I think it is clear what motor vehicle is being referred to without using the word "new."

Memorandum from Bill Wolford, Assistant Attorney General, to John Sumi, Legislative Aide to Representative Holschbach (April 22, 1985).

Finally, we note that during the Lemon Law's re-creation, § 218.015(1)(d), STATS.—the statute's "motor vehicles" definition—was amended to include demonstrator and executive vehicles. In our view, the legislature included these vehicle types because it equated demonstrator and executive vehicles with brand new vehicles since these vehicles never leave the control of the dealer. When a vehicle remains in the dealer's control, the dealer is apprised of how the vehicle is being used and can perform any maintenance or repairs. This is not the situation with Schey's Neon. The Neon had previously been leased to another consumer for six months. Unlike the situation created by a demonstrator or executive vehicle, the consumer who leased the Neon controlled the vehicle. The Lemon Law is not applicable to Schey's Neon because before Schey purchased the vehicle, the Neon had left Chrysler's direct control. *Cf. Malone v. Nissan Motor Corp. in U.S.A.*, 190 Wis. 2d 436, 442, 526 N.W.2d 841, 843 (Ct. App. 1994) (holding that an automobile manufacturer's warranty does not cover defects that "the manufacturer did not design, engineer, manufacture, distribute, sell or advertise"). In sum, we conclude that previously-owned vehicles, such as Schey's Neon, were not intended to be covered by the Lemon Law.

*By the Court.*—Judgment affirmed.

SNYDER, P.J. *(dissenting)*. Because I agree with Schey that § 218.015, STATS., the "Lemon Law," applies to motor vehicles that have been established as "lemons" within the first year after the date of delivery to a

consumer and while still under the manufacturer's "new" car warranty, and that he has standing as a Lemon Law motor vehicle consumer, I respectfully dissent. Schey challenged Chrysler Corporation's summary judgment motion by establishing that he owns a 1995 Dodge Neon that qualified as a lemon on June 28, 1996; that the first date of delivery to a motor vehicle consumer was July 18, 1995; and that the Neon remained under a manufacturer's warranty. Undaunted by Schey's challenge, my colleagues affirm the summary judgment dismissal of Schey's complaint as a matter of law. They are wrong.

The majority opinion concludes that the Lemon Law is ambiguous because it does not differentiate between "new" and "previously-owned" motor vehicles. It then decides that the first consumer obtains a "new" motor vehicle while a subsequent consumer can only obtain a "previously-owned" or "used" motor vehicle. The majority resolves the ambiguity by reasoning that used motor vehicles are not subject to Lemon Law protections. Under the existing Lemon Law definitions, the majority analysis is unnecessary.

First, the 1995 Dodge Neon qualifies as a Lemon Law "motor vehicle." The term "motor vehicle" is defined for Schey's purposes as "any motor driven vehicle required to be registered under ch. 341 . . . which a consumer purchases or accepts transfer of in this state." Section 218.015(1)(d), STATS.[1] That definition

---

[1] My colleagues find support for their position in the fact that § 218.015(1)(d), STATS., was amended to include demonstrator and executive vehicles in the "motor vehicle" definition. Schey's Neon was neither a demonstrator nor an executive-driven motor vehicle, but if it had been, the Lemon Law would still have protected Schey as a purchaser or transferee of a ch. 341, STATS., registered motor vehicle during the first year of

neither limits motor vehicle registration to the first purchaser or transferee nor requires that the purchase or transfer of the motor vehicle be only from the manufacturer or a franchised dealer. The term "new" is relevant only to the existence of the manufacturer's warranty which is triggered by the delivery of a previously unregistered and untitled motor vehicle. It is axiomatic that all motor vehicles, once delivered and registered under ch. 341, STATS., are used motor vehicles.

Second, Schey is a protected "consumer" under the Lemon Law definition, which reads:

> "Consumer" means *any* of the following:
> 1.   The purchaser of a new motor vehicle, if the motor vehicle was purchased from a motor vehicle dealer for purposes other than resale.
> 2.   *A person to whom the motor vehicle is transferred for purposes other than resale, if the transfer occurs before the expiration of an express warranty applicable to the motor vehicle.*
> 3.   *A person who may enforce the warranty.*
> 4.   A person who leases a motor vehicle from a motor vehicle lessor under a written lease.

Section 218.015(1)(b), STATS. (Emphasis added.)

The Neon was first delivered to a lessee with standing as a Lemon Law consumer under § 218.015(1)(b)4, STATS. When Schey purchased the Neon, he was not a transferee for resale, he purchased it before the expiration of the manufacturer's warranty, and he was entitled to enforce the manufacturer's warranty. Schey is a recognized Lemon Law motor vehicle consumer under subds. (1)(b)2 and 3. The majority opinion wrongly limits the definition of

such registration and while the vehicle was still under the manufacturer's warranty.

eligible consumer to that in subd. (1)(b)1. By rewriting the definitions of "motor vehicle" and "consumer," the majority creates a loophole large enough to drive a § 218.015, STATS., nonconforming motor vehicle through.

This court should reverse the partial summary judgment dismissal of Schey's Lemon Law claim and remand the action to the trial court for further proceedings consistent with the existing law.