Alan W. HERZBERG, Jr. and Patricia A. Herzberg,
Plaintiffs-Respondents,

v.

FORD MOTOR COMPANY, Defendant-Appellant

UPTOWN MOTORS, INC., Defendant.

Court of Appeals

*No. 00–1284. Submitted on briefs January 12, 2001.—Decided
February 14, 2001.*

2001 WI App 65

(Also reported in 626 N.W.2d 67.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Patrick L. Wells* of *Crivello, Carlson, Mentkowski & Steeves, S.C.* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *William S. Pocan* and *Vincent P. Megna* of *Jastroch & LaBarge, S.C.* of Waukesha.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1. NETTESHEIM, J. This is a Lemon Law case. The parties agree that the vehicle is a "lemon." The dispute is whether Ford Motor Company could require the purchasers, Alan W. and Patricia A. Herz-

berg, to provide information about the condition of the vehicle before refunding the purchase price. The trial court ruled that the Lemon Law did not permit Ford to make such a conditional refund. At a motion for reconsideration hearing, the court confirmed its prior ruling. Ford appeals. Only the reconsideration proceeding is before this court.

## FACTS

¶ 2. The material facts are documented in the parties' written correspondence and are not in dispute.[1] During January 1998, the Herzbergs purchased a 1998 Mercury Mystique manufactured by Ford.[2] The vehicle proved to be a "lemon" pursuant to the Lemon Law, WIS. STAT. § 218.0171 (1999–2000).[3] Accordingly, on August 17, 1998, the Herzbergs offered to return the vehicle and transfer the title to Ford in exchange for a full refund of the purchase price.[4] On September 11, 1998, Ford agreed to the refund subject to certain conditions. Germane to this case, Ford required that the Herzbergs take responsibility for "[a]ny missing equipment, abnormal wear or collision damage (including broken glass) evident to the vehicle (the vehicle must be returned in good condition)." On September 14, the Herzbergs responded that they would sign only those

[1] When referring to written correspondence, we include the parties' facsimile transmissions.

[2] The Herzbergs purchased the vehicle from Uptown Motors, Inc., who they named as an additional defendant. However, Uptown was eventually dismissed from the case and it does not participate in this appeal.

[3] All references to the Wisconsin Statutes are to the 1999–2000 version.

[4] All of the correspondence and exchanges which we recite were conducted through the parties' attorneys.

documents necessary to transfer title to the vehicle. On September 16, Ford advised the Herzbergs that their refund check could be picked up at the dealership the following day. This correspondence included a packet of forms including a power of attorney, sales/usage tax waiver and assignment, a bill of lading that included information concerning the condition of the vehicle, and a reacquired vehicle inspection/condition report which also required documentation about the condition of the vehicle.

¶ 3. The next day, September 17, saw a flurry of facsimile exchanges. The Herzbergs responded that they would sign the power of attorney and the sales/usage tax waiver and assignment forms subject to certain changes in the language.[5] However, they stated that they would not sign the bill of lading or the reacquired vehicle inspection report because such documents were not recognized or required under the Lemon Law. Ford then proposed that instead of signing the bill of lading it had forwarded, the Herzbergs should prepare and sign an equivalent form. However, Ford required that the form state that "the above mentioned vehicle is being returned to the manufacturer with no missing equipment, no abnormal wear or collision damage (including broken glass) evident to the vehicle. The vehicle is being returned in good condition." The Herzbergs declined this proposal, again observing that the Lemon Law did not require them to sign any documents relating to the condition of the vehicle. The parties' negotiations ended at this point, and this lawsuit by the Herzbergs followed.

---

[5] In addition, the Herzbergs stated that they would sign an odometer disclosure statement.

## TRIAL COURT PROCEEDINGS

¶ 4. The Herzbergs' complaint alleged a variety of claims, including breach of contract and violations of the Lemon Law and the Uniform Commercial Code (UCC). Ford moved for summary judgment contending that all of the claims were barred because it had offered the Herzbergs a full refund of the purchase price as required by the Lemon Law. The Herzbergs opposed the motion, arguing that the conditions which Ford attached to the refund offer were not recognized by the Lemon Law. The trial court agreed with the Herzbergs and denied Ford's motion for summary judgment. Thereafter, the parties continued with discovery.

¶ 5. With the trial court having resolved the legal question regarding the Herzbergs' Lemon Law claim, the parties eventually agreed that there were no factual issues in dispute regarding that claim. The trial court therefore entered judgment in favor of the Herzbergs on the Lemon Law claim in the amount of $34,416.28, twice the amount of the purchase price pursuant to WIS. STAT. § 218.0171(7). The court also dismissed the Herzbergs' remaining claims. The court scheduled a further hearing regarding the litigation expenses, including attorneys' fees, to be awarded to the Herzbergs. *See id.*

¶ 6. Ford then moved for reconsideration of the trial court's summary judgment ruling on the Herzbergs' Lemon Law claim. In support, Ford cited to some of the evidence obtained in discovery subsequent to the court's summary judgment ruling. In addition, Ford cited to certain provisions of the UCC and the common law of contracts. The trial court denied the motion.

¶ 7. Following a hearing on the Herzbergs' litigation expenses, including attorneys' fees, the trial court

entered an amended judgment for the Herzbergs in the total amount of $109,192.15.[6] Ford appealed from the trial court's various orders and judgments. However, we previously ruled that this appeal covers only the reconsideration order and the provisions of the amended judgment which do not replicate the award in the original judgment.

## DISCUSSION

### Appealability of the Reconsideration Order

¶ 8. On appeal, Ford argues that certain provisions of the UCC and the common law of contracts allowed it to require the Herzbergs to provide information relating to the condition of the vehicle as a condition of the purchase price refund. In essence, Ford argues that the Lemon Law should be read in conjunction with these other areas of the law.

¶ 9. The Herzbergs respond by first raising a jurisdictional issue. They contend that the trial court's reconsideration order is not appealable because Ford's reconsideration motion raised the same issues which were addressed in the original summary judgment proceedings. "[A]n order entered on a motion to modify or vacate a judgment or order is not appealable where . . . the only issues raised by the motion were disposed of by the original judgment or order." *Ver Hagen v. Gibbons,* 55 Wis. 2d 21, 25, 197 N.W.2d 752 (1972).

---

[6] The judgment included interest on the doubled purchase price of the vehicle previously awarded, double costs and interest based on an offer of settlement pursuant to WIS. STAT. § 807.01(3) and (4) which the Herzbergs had made following the trial court's initial award, and $54,231.75 in attorneys' fees pursuant to WIS. STAT. § 218.0171(7).

¶ 10. Ford's answer did allege affirmative defenses under the UCC provisions of WIS. STAT. §§ 402.608(2) and 402.607(3)(a) governing "revocation of acceptance" and "acceptance of tender," respectively. Ford further alleged that its tender of the purchase price precluded any claim for damages under a breach of contract theory. However, Ford's summary judgment arguments did not rely on these allegations.[7] Instead, Ford focused squarely on its argument that the Lemon Law allowed it to require the Herzbergs to provide information regarding the condition of the vehicle as a condition of the refund. Not surprisingly then, the trial court's summary judgment ruling similarly focused on the Lemon Law and did not address the UCC or the common law of contracts.

¶ 11. In its reconsideration motion, Ford shifted gears, relying on the UCC and the common law of contracts. In addition, Ford cited to certain evidence obtained in discovery conducted subsequent to the trial court's summary judgment ruling. Given the different focus of the reconsideration motion both from a legal and factual standpoint, we conclude that the trial court's summary judgment ruling did not encompass the additional issues raised by Ford's reconsideration motion. We reject the Herzbergs' argument that we are without jurisdiction to address the merits of Ford's appeal.

---

[7] Ford's brief did allude to the UCC but only in reference to the claim the Herzbergs had asserted under the UCC.

## The Lemon Law, The UCC and The Common Law of Contracts

¶ 12. As noted, Ford argues that the Lemon Law should be harmonized with certain provisions of the UCC and the common law of contracts.

¶ 13. We first address the UCC issue. Ford cites to the following provisions of the UCC: WIS. STAT. § 402.515 ("Preserving evidence of goods in dispute"), § 402.607(3) (governing acceptance of a tender), § 402.608 ("Revocation of acceptance in whole or in part"), and § 402.602 ("Manner and effect of rightful rejection").

■

¶ 14. Our supreme court has recently set out the history and public policy which underpin the Lemon Law.

> The lemon law was enacted to provide consumers with remedies beyond the "inadequate, uncertain and expensive remedies of the [UCC] or the Magnuson-Moss Warranty Act." It is a warranty enforcement statute, "a self-enforcing consumer law that provides important rights to motor vehicle owners. . . . The intent behind the law was to improve auto manufacturers' quality control . . . [and] reduce the inconvenience, the expense, the frustration, the fear and [the] emotional trauma that lemon owners endure." The law also was designed to provide an incentive to a manufacturer to restore a purchaser of a "lemon" to the position he [or she] was in at the time of the purchase.

*Dieter v. Chrysler Corp.*, 2000 WI 45, ¶ 23, 234 Wis. 2d 670, 610 N.W.2d 832 (citation omitted). *See also Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 979–81, 542 N.W.2d 148 (1996). The Lemon Law was

intended to do more than simply parrot the remedies previously available to the consumer. *Id.* at 983.

¶ 15. This language signals that the Lemon Law is a "stand alone" statute which is not dependent upon, or qualified by, the UCC. Both *Dieter* and *Hughes* expressly recognized the inadequacies of the UCC as an enforcement tool in this area. In light of that history, we should not build back into the Lemon Law the shortcomings and roadblocks of the UCC.

¶ 16. Therefore, in assessing whether Ford was entitled to require the Herzbergs to provide information regarding the condition of the vehicle as a condition to receiving the purchase price refund, we limit our examination to the Lemon Law. And we are assisted in this effort by this court's recent decision in *Chariton v. Saturn Corp.*, 2000 WI App 148, 238 Wis. 2d 27, 615 N.W.2d 209.[8] There the manufacturer required that the customer sign a release as a condition to receiving the refund. *Id.* at ¶ 1. The manufacturer said that this was permitted because the Lemon Law was silent on the matter. *Id.* at ¶ 3. We disagreed. We held that the Lemon Law does not contemplate that the consumer be required to sign a general release in order to obtain a refund. *Id.* at ¶ 5.

¶ 17. We read *Chariton* to mean that the obligations of the consumer who has purchased a "lemon" are limited to those set out in the Lemon Law. As relevant to this case, those obligations were to offer to return the title of the vehicle to the manufacturer and, once the refund was made, to return the vehicle and provide the

---

[8] *Chariton v. Saturn Corp.*, 2000 WI App 148, 238 Wis. 2d 27, 615 N.W.2d 209, was decided after the trial court proceedings in this case. Nonetheless, the trial court's ruling was in keeping with the reasoning of *Chariton*.

manufacturer with the certificate of title and all endorsements necessary to transfer title to the manufacturer. WIS. STAT. § 218.0171(2)(c). The Herzbergs complied, or stood ready to comply, with all of these provisions. But the Lemon Law did not require the Herzbergs to comply with Ford's further condition that they provide information regarding the condition of the vehicle. We reject Ford's invocation of UCC law.

¶ 18. Ford also argues that the "good faith" principles recited in the common law of contracts should be read into the Lemon Law. "Every contract implies good faith and fair dealing between the parties to it." *Bozzacchi v. O'Malley*, 211 Wis. 2d 622, 626, 566 N.W.2d 494 (Ct. App. 1997) (citation omitted). While we agree that good faith is implicit in the Lemon Law, we disagree with Ford that this obligation is rooted in the parties' contract. Rather, the obligation is rooted in the Lemon Law itself. It should go without saying that the legislature contemplated that all the parties covered by the Lemon Law should act in good faith. Any other interpretation of the statute would be absurd and contrary to public policy.

¶ 19. But our holding that a consumer must act in good faith under the Lemon Law does not undo the trial court's ruling in this case. We have determined what the Herzbergs' obligations were under the Lemon Law, and the undisputed facts demonstrate that the Herzbergs complied with these obligations.[9] Having ruled that the Lemon Law did not permit Ford to make a conditional refund offer, we cannot logically rule that the Herzbergs engaged in bad faith by rejecting the offer.

[9] Indeed, we discern no argument from Ford to the contrary.

## *CONCLUSION*

¶ 20. In summary, the UCC was irrelevant to this case.[10] And since the Herzbergs acted in compliance with the Lemon Law, Ford has no basis for arguing that they acted in bad faith. We affirm the order rejecting Ford's reconsideration motion. Therefore, we also affirm the amended judgment.

*By the Court.*—Judgment and order affirmed.

---

[10] Ford argues that the UCC provisions were relevant to this case because the Herzbergs also pled claims under the UCC. We disagree. We are concerned here with the Lemon Law, not the other claims which were dismissed.