Marco A. MARQUEZ,
Plaintiff-Respondent,

v.

MERCEDES-BENZ USA, LLC,
Defendant-Appellant.

Court of Appeals

*No. 2007AP681. Submitted on briefs December 13, 2007.
—Decided April 9, 2008.*

2008 WI App 70

(Also reported in 751 N.W.2d 859.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Patrick L. Wells* and *Thomas Armstrong* of *von Briesen & Roper, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Vincent P. Megna* and *Susan M. Grzeskowiak* of Waukesha.

Before Brown, C.J., Anderson, P.J., Snyder, J.

¶ 1. BROWN, C.J.   The manufacturer of a "lemon" vehicle has thirty days to fulfill a consumer's request for replacement or refund under Wisconsin's Lemon Law. The state's courts have consistently refused to extend or ignore this deadline when the manufacturer and consumer could not reach agreement on refund details, or to allow a manufacturer to impose its own conditions on the consumer's refund. Our position has been that the Lemon Law lays out the consumer's obligations, and that once those are met, it is the manufacturer's responsibility to make the refund or replacement happen within thirty days. *See Herzberg v. Ford Motor Co.*, 2001 WI App 65, ¶ 17, 242 Wis. 2d 316, 626 N.W.2d 67. If the manufacturer does not do so, the consumer will be entitled to the harsh statutory remedies, including double damages. As we said in *Chariton v. Saturn Corporation*, 2000 WI App 148, ¶ 5, 238 Wis. 2d 27, 615 N.W.2d 209, "[t]here are no excuses."

¶ 2.   However, each of our previous cases has involved a manufacturer making an "excuse" for *its* decision not to provide a refund within the allotted time. What if, on the other hand, the manufacturer tries to pay the refund but is intentionally prevented from

212

doing so by the consumer? Though we have never had to answer this question, we have anticipated that it could arise. In *Herzberg*, 242 Wis. 2d 316, ¶ 18, we stated that the statute contemplates both the manufacturer and the consumer acting in good faith, though we did not say exactly what "good faith" requires in this context. In *Chariton*, 238 Wis. 2d 27, ¶ 3 n.3, we raised but did not answer the question of "whether the consumer has a duty to communicate promptly with the manufacturer regarding the details of the refund."

██

¶ 3.   This appeal requires us, for the first time, to define a consumer's good faith obligations relating to the Lemon Law. The manufacturer here claims that the consumer intentionally thwarted its attempt to make a refund by failing to provide necessary information about the consumer's auto loan. We hold that, if this is found to be true, the consumer is not entitled to the Lemon Law's statutory remedies. The legislature could not have intended that the consumer be allowed to block a manufacturer from complying with the statute and then reap the rewards of noncompliance. We therefore reverse the circuit court's grant of summary judgment to the consumer. We conclude that the record presents a genuine issue of material fact as to whether the consumer acted in bad faith, and so we remand for trial.

¶ 4.   There is no dispute about most of the facts. Marco Marquez bought a new Mercedes from a Milwaukee dealer. He financed this purchase with a loan from Waukesha State Bank. The car turned out to be a lemon, and Marquez eventually sent Mercedes-Benz USA ["MB"] a demand for a refund, which MB received on October 28, 2005. In the following days, Marquez and a representative of MB had phone conversations

about the possibility of Marquez exchanging his car for a different model and paying any price difference. On November 23 (the day before Thanksgiving), Marquez told the representative that he did not want a different model and instead wanted his refund. The representative told Marquez that he would contact him the Monday after the weekend to arrange the details of the payment. That Monday was November 28, or thirty-one days after MB received Marquez's Lemon Law notice.[1] On that day, the MB representative again called Marquez.

¶ 5. However, the parties do not agree on the precise substance of this conversation, or on what happened afterward. The representative stated at deposition that he told Marquez he had contacted the bank and they would not provide him with the payoff information because of privacy laws, and he asked Marquez to contact the bank, get the payoff information, and relay it back to him. According to the MB representative, Marquez agreed to call him back with the payoff information that afternoon. Marquez, on the other hand, deposed that he did not remember the representative asking him to contact the bank. He also stated that he told the representative that he would call his attorney.

¶ 6. That afternoon, the representative also called Marquez's attorney's office, but was unable to get through to an attorney. He left a message saying "Please call me back." He did not hear back from either Marquez or his attorney on that day, and the thirtieth day passed with no refund to Marquez. The next day, Marquez filed this action. The circuit court ultimately granted summary judgment to Marquez.

---

[1] Though the Lemon Law requires the refund within thirty days, the thirtieth day in this case fell on a Sunday. The parties do not dispute that MB could therefore make its refund on the following day without running afoul of the statute.

214

¶ 7. Summary judgment is granted when there are no genuine issues of material fact and one party is entitled to a judgment as a matter of law. WIS. STAT. § 802.08 (2005–06).[2] We review the circuit court's grant of summary judgment without deference, applying the same methodology as the circuit court. *State v. Bobby G.*, 2007 WI 77, ¶ 36, 301 Wis. 2d 531, 734 N.W.2d 81. This case requires interpretation of the Lemon Law statute, which also presents questions of law that we review de novo. *See State v. Johnson*, 2007 WI App 41, ¶ 4, 299 Wis. 2d 785, 730 N.W.2d 661.

¶ 8. The Lemon Law allows the purchaser of a new car which does not conform to its warranty to receive a refund (or a comparable new vehicle) after reasonable attempts to repair the car have failed. WIS. STAT. §§ 218.0171(1)(b)1., (2)(a)-(b). To initiate the refund process, the consumer must offer to transfer the faulty vehicle's title to the manufacturer. Sec. 218.0171(2)(c). The manufacturer then has thirty days to make the refund. *Id.* A manufacturer who fails to meet this deadline may be subject to double damages, attorney fees, costs, and equitable relief in a subsequent action. Sec. 218.0171(7).

¶ 9. MB argues that it was impossible for it to make a proper refund because it did not know how much Marquez owed the bank on his auto loan, and that it was required to pay this amount to the bank as part of the refund. MB further claims that Marquez's failure to provide that information amounts to bad faith. Before we address whether Marquez's conduct

---

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

215

might constitute bad faith, we will consider whether MB in fact needed the information it sought from Marquez.

¶ 10.   Marquez successfully argued before the circuit court that MB did not need to know the payoff amount for the loan, because it could have given a single check for the entire refund to Marquez, and let Marquez and the bank settle the loan between themselves. We acknowledge that, as a general matter, a payor can write a multiple-party check that requires the consent of all payees to cash. *See* 11 AM. JUR. 2D *Bills and Notes* § 205 (1997). However, the question here is not about general check-writing principles, but about whether handing one lump-sum check to Marquez would put MB in compliance with the Lemon Law. We conclude that it would not. The bank was listed as a secured party on the title application, giving it a perfected security interest in the car. *See* WIS. STAT. § 342.19(2). The Lemon Law requires the manufacturer to "refund [the purchase price and other costs] to the consumer *and to any holder of a perfected security interest* in the consumer's motor vehicle, *as their interest may appear.*" WIS. STAT. § 218.0171(2)(b)2.b. (emphasis added). In our view, the plain and ordinary meaning of the phrase "refund to . . . any holder of a perfected security interest . . . as [its] interest may appear" involves the payor transferring the correct sum to the secured lender – not, as Marquez suggests, giving a lump-sum check to the consumer and leaving him or her to sort it out with the lender. To comply with the Lemon Law, MB was required to write a separate check to Waukesha State Bank paying off its interest in the car.

¶ 11.   However, Marquez argues that even if MB needed to know the correct payoff amount to pay the

refund, it already had in its possession all of the information it needed to calculate the payoff amount on its own. Marquez points out that the loan document, which laid out the interest and payment terms, was appended to the Lemon Law notice, and therefore claims that MB needed only do some simple arithmetic to know how much to pay the bank and how much to pay Marquez. Again, we cannot agree. The loan document gives no information about Marquez's history of payment; he might well have made early payments or been delinquent in the six months that passed between the purchase of the car and the delivery of the notice. Without *current* information, MB would have no way of knowing whether it was paying the correct amounts to Marquez and to the bank. For this reason, the standard Lemon Law notice form distributed by the state Department of Transportation includes a line for a consumer to provide the name of the loan provider and the loan account number, along with the statement that "[b]y providing this information, I authorize the manufacturer to contact this financial institution for financing information needed to calculate a refund."[3] As MB points out, Marquez included his lender name and loan account number with his Lemon Law notice, suggesting that he recognized that MB would need more precise loan information than it had.[4]

---

[3] *See* Motor Vehicle Lemon Law Notice, http://www.dot.wisconsin.gov/safety/consumer/forms/llfrm700.pdf (last visited February 13, 2008).

[4] Marquez also argues that since MB had this authorization on the Lemon Law notice, and because he had earlier contacted a loan officer at the bank to say that someone from MB might be calling, MB could have obtained the loan information directly from the bank on November 28. In fact, the MB representative testified that he did contact the bank on the 28th and that the

¶ 12.   We therefore conclude that MB did, in fact, need further payoff information to make the proper refund under the Lemon Law. We must therefore address the second issue in this case:   If Marquez intentionally withheld this information and thereby caused MB to miss the thirty-day refund window, is he entitled to the statutory damages for MB's violation of the statute?

¶ 13.   One notable theme in Wisconsin's Lemon Law jurisprudence has been manufacturers' claims that the thirty-day limit could be extended or circumvented because of disputes over refund details or the pursuit of alternative resolutions to claims. These claims have been rejected in a string of cases, beginning with *Church v. Chrysler Corp.*, 221 Wis. 2d 460, 585 N.W.2d 685 (Ct. App. 1998). In that case, the consumer offered to transfer title and demanded a refund. *Id.* at 464. The manufacturer responded with its calculation of the refund amount, but the consumer rejected that amount as too low. *Id.* The manufacturer replied by letter disputing the consumer's claim but agreeing to include part of the disputed amount in the refund. *Id.* at 464–65. However, the refund did not arrive until more than thirty days had passed since the consumer's origi-

bank refused to provide the information. Marquez responds that the MB representative failed to tell the bank of the authorization form, because the representative was unaware that he had it. MB disputes that Waukesha State Bank would have given the information even if it knew of the authorization, since it was signed not by Marquez but by his attorney. Each party cites to testimony from bank officials about the bank's policies on releasing information. We conclude that on this record it is a question of fact whether and under what circumstances the bank would have released Marquez's loan information to MB.

nal offer to transfer title. *Id.* at 465. By then the consumer had filed suit. *Id.*

¶ 14. We rejected the manufacturer's claim that the consumer's attempts to negotiate a greater refund either restarted the thirty-day clock or removed the case from the Lemon Law altogether. *Id.* at 468. We held that though the consumer's letter might have complicated the refund process, "once the consumer makes an offer to transfer title, the burden is on the manufacturer to comply with the thirty-day requirement regardless of whether items or amounts are in dispute." *Id.* at 468–69. We recognized that this could put manufacturers in a difficult position, since they would have to either accede to the consumer's calculation of a refund or run the risk of paying double damages, but we concluded that this was the legislature's policy decision and was not up to us to modify. *See id.* at 469–70.

¶ 15. In *Chariton*, the manufacturer refused to provide a refund if the consumer did not sign a release. *Chariton*, 238 Wis. 2d 27, ¶ 2. On appeal, we held that since the Lemon Law creates a right and remedy separate from any others afforded by law, the manufacturer has no right to insist on a release of all claims as a condition of a refund. *Id.*, ¶ 5. Further, we relied on the reasoning of *Church* and held that just as negotiations over refund amount do not alter the thirty-day refund time limit, neither do negotiations over the breadth of a release that the manufacturer wishes to have the consumer sign. *Chariton*, 238 Wis. 2d 27, ¶ 1.

¶ 16. One additional thing about *Chariton* is worth noting. In a footnote, we reserved the question "whether the consumer has a duty to communicate promptly with the manufacturer regarding the details of the refund" which question we described as a "good faith issue." *Id.*, ¶ 3 n.3. We avoided the question

because we determined that the manufacturer had all of the information it needed to calculate the refund, and so it was "not a case where the manufacturer was lost at sea due to the consumer's alleged evasiveness." *Id.*

¶ 17. The next case in line is *Herzberg.* In that case the manufacturer sought, as a condition of a refund, to have the consumers sign a form stating that the lemon vehicle was being returned without missing equipment or damage, in good condition. *Id.*, 242 Wis. 2d 316, ¶ 3. The consumers refused, sued, and won in the circuit court. *Id.*, ¶¶ 3, 7. On appeal the manufacturer argued that the guarantees it had demanded from the consumers were permitted under the Uniform Commercial Code and the common law of contracts, and that we should "harmonize" the Lemon Law with these bodies of law. *Id.*, ¶¶ 12–13. We refused to do so, relying on the purpose of the Lemon Law as well as our reasoning in *Chariton. Herzberg*, 242 Wis. 2d 316, ¶¶ 14–17. We interpreted *Chariton* to mean that a consumer's obligations under the Lemon Law are limited to those the statute sets out, and that signing the manufacturer's proffered form was not among these obligations. *Herzberg*, 242 Wis. 2d 316, ¶ 17.

¶ 18. The manufacturer in *Herzberg* also argued that the contract principles of good faith and fair dealing ought to be read into the Lemon Law, and that the consumers had acted in bad faith by refusing to guarantee the vehicle's condition. *Id.*, ¶¶ 18–20. We agreed that good faith was required of all parties to a Lemon Law action, not because of the parties' contract but because "[i]t should go without saying that the legislature contemplated that all the parties covered by the Lemon Law should act in good faith." *Id.*, ¶ 18. However, because we had already determined that the

220

Lemon Law did not permit the manufacturer to condition its refund on the consumer signing its guarantee form, we could not logically say that the consumer acted in bad faith by rejecting that condition. *Id.*, ¶ 19.

¶ 19.  *Church, Chariton* and *Herzberg* established the principle that disagreements or negotiations between manufacturer and consumer will not toll or avoid the thirty-day time limit of the Lemon Law. If the parties cannot reach agreement by day thirty, it is up to the manufacturer to decide whether to meet the consumer's demands or make the refund on the terms it believes proper. If it takes the latter course and the consumer brings an action, and the manufacturer turns out to have been wrong, it will be required to face the statutory consequences. *See Church*, 221 Wis. 2d at 469. But in any case, the manufacturer must make payment by day thirty regardless of the status of negotiations.

¶ 20.  But this case is not about negotiations, or about a manufacturer attempting to impose nonstatutory conditions for a refund. Construing the evidence most favorably to MB (as we must, since this is a review of a grant of summary judgment to Marquez[5]) this is a case in which the manufacturer stood ready to comply with its statutory obligations and was prevented from doing so by the consumer's deliberate obstruction; i.e., a case in which the manufacturer was "lost at sea due to the consumer's alleged evasiveness." *See Chariton*, 238 Wis. 2d 27, ¶ 3 n.3.

■

¶ 21.  Granted, there is nothing in the statute explicitly forbidding a consumer from deliberately forc-

---

[5] *See Johnson v. Rogers Memorial Hosp., Inc.*, 2005 WI 114, ¶ 30, 283 Wis. 2d 384, 700 N.W.2d 27.

ing a manufacturer to violate the statute, in order to reap the extra statutory damages. Nevertheless, as we said in *Herzberg*, it would be absurd to imagine that the legislature, in passing the Lemon Law, intended to allow this sort of abuse. *Herzberg*, 242 Wis. 2d 316, ¶ 18. The statutory penalties of the Lemon Law provide an incentive for manufacturers to promptly comply with the refund and exchange rules by making it costly to delay. *Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 984, 542 N.W.2d 148 (1996). This purpose is not served if the consumer may, in essence, inflict the penalties on the manufacturer even if the manufacturer is attempting to comply with the law within the proper time limit.

¶ 22.   We wish to reemphasize what we said in *Herzberg*—a consumer's duty to act in good faith in pursuing a Lemon Law claim inheres in the statute itself, and is not imported from contract law. *Herzberg*, 242 Wis. 2d 316, ¶ 18. The contractual doctrine of good faith and fair dealing is an amorphous and far-reaching concept that binds a party to performance beyond the express terms of an agreement. *See Peddie v. Sterling Jewelers, Inc.*, 282 F. Supp. 2d 947, 952 (E.D. Wis. 2003) ("A complete catalogue of types of bad faith is impossible."). We hold only that a consumer fails to act in good faith when he or she intentionally prevents the manufacturer from complying with the statute.

¶ 23.   We conclude that this is true even if, as is the case here, the manufacturer does not attempt to make a refund until near the end of the statutory time limit. MB spent the bulk of the thirty days trying to induce Marquez to abandon his Lemon Law refund demand and accept a trade for a different auto model. According to Marquez, the MB representative also asked him not to deal with his attorneys and to "drop

his suit." Certainly, if MB had persisted in this approach past the thirty-day window, it would be subject to the statutory damages of the Lemon Law. But there is nothing preventing the negotiation of alternative resolutions while the thirty days are passing. *See Berends v. Mack Truck, Inc.*, 2002 WI App 69, ¶ 15 n.7, 252 Wis. 2d 371, 643 N.W.2d 158. And the thirty-day window that the Lemon Law provides, and that we have strictly enforced against manufacturers, is just that:  a thirty-day window, and not a one-, ten-, or twenty-nine-day window. If MB had provided Marquez with his refund on the thirtieth day, it would have been in compliance with the statute, without a doubt. If MB stood ready to comply on the thirtieth day, and only Marquez's deliberate refusal to provide the necessary information prevented it from doing so, we can see no reason why the fact that it was the thirtieth day should make any difference.

¶ 24.   We conclude that the record could support contrary conclusions about whether Marquez is, in fact, guilty of this conduct, however. In particular, the differing recollections of the conversations between Marquez and the MB representative create an issue of fact about what was requested of, and agreed to by, Marquez. Summary judgment is not the means for resolving such factual disputes. We therefore remand for trial.

*By the Court.*—Order and judgment reversed and cause remanded.