In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-3773

JAMES MICHAEL LEASING COMPANY LLC,

*Plaintiff-Appellee,*

*v.*

PACCAR, INCORPORATED,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:11-cv-00747 — **Lynn Adelman**, *Judge.*

ARGUED JUNE 2, 2014 — DECIDED NOVEMBER 26, 2014

Before FLAUM and WILLIAMS, *Circuit Judges*, and DOW, *District Judge*.[*]

DOW, *District Judge*. James Michael Leasing Company, LLC purchased a brand-new semi-truck from PACCAR, Incorporated, in 2007. Approximately four years and 3,000 miles later, James Michael Leasing concluded that the truck

_____

[*] The Honorable Robert M. Dow, Jr., of the Northern District of Illinois, sitting by designation.

was a lemon and sought a refund from PACCAR pursuant to Wisconsin's Lemon Law, Wis. Stat. § 218.0171.[1] PACCAR agreed to refund the purchase price, but the parties' dealings turned sour when a dispute arose over reimbursement of a $53.00 title fee. This seemingly insignificant quibble escalated into a debate over the "reasonable allowance for use" to which PACCAR was entitled and drove a wedge between the parties that culminated in an interest-bearing judgment of $369,196.06, plus $157,697.25 in attorneys' fees, for James Michael Leasing. PACCAR contends that it complied with all relevant provisions of the Lemon Law and that the district court erred in calculating James Michael Leasing's pecuniary loss. We disagree and affirm the judgment of the district court in all respects.

## I.

### A.

The facts of this case are largely undisputed. Wisconsin-based James Michael Leasing ("JM Leasing") purchased a brand-new, PACCAR-manufactured 2008 Kenworth T800 semi-truck from a Wisconsin PACCAR dealer in late August 2007. (PACCAR is organized under the laws of Delaware and has its principal place of business in Washington; this case is in federal court under the diversity jurisdiction statute, 28 U.S.C. § 1332.) JM Leasing financed the purchase

---

[1] Numerous amendments to the Lemon Law took effect on March 1, 2014, including the addition of provisions limiting recovery to the consumer's actual pecuniary loss and shortening the time period in which to bring suit to 36 months from the date the vehicle was first delivered to the consumer. All citations and quotations in this opinion use the version of the law that was in effect during the times pertinent to this suit.

with a loan from PACCAR Financial Corporation, a wholly owned subsidiary of PACCAR.

After experiencing trouble with the truck over the next four years and 3,076 miles, JM Leasing sent PACCAR a notice seeking refund of the purchase price and other amounts due under Wisconsin's Lemon Law, Wis. Stat. § 218.0171. PACCAR received the concededly proper notice on June 7, 2011. PACCAR's receipt of the notice triggered a 30-day period in which PACCAR was required to "[a]ccept return of the motor vehicle and refund to the consumer and to any holder of a perfected security interest in the consumer's motor vehicle, as their interest may appear, the full purchase price plus any sales tax, finance charge, amount paid by the consumer at the point of sale and collateral costs, less a reasonable allowance for use." Wis. Stat. §§ 218.0171(2)(b)2.b, 218.0171(2)(c). For its part, JM Leasing, upon receipt of the refund, would be obligated to return the truck to PACCAR and take any steps necessary to transfer title back to PACCAR. Wis. Stat. § 218.0171(2)(c). The 30-day period was scheduled to end on July 7, 2011.

On June 28, 2011, PACCAR employee Shawn Miller sent an e-mail to JM Leasing employee Janie Kincaid. Miller advised Kincaid that PACCAR would issue a refund, which it had calculated as follows:

| | |
|---|---|
| Purchase price, inclusive of federal excise tax: | $ 135,847.00 |
| Collateral costs: | $ 11,764.87 |
| Interest: | $ 31,777.03 |
| | |
| Total: | $ 179,388.90 |
| | |
| Less lien payoff through June 30, 2011: | $ 61,647.05 |

Total amount due to JM Leasing:              $ 117,741.85

The next day, Miller further advised Kincaid that PACCAR planned to mail two checks to JM Leasing, both payable to JM Leasing. One of the checks, in the amount of $61,647.05, was intended to fulfill PACCAR's obligation to pay off the lien. The other, in the amount of $117,741.85, represented PACCAR's calculation of the amount JM Leasing itself was due.

Kincaid responded to Miller that same day. She informed him that the refund to JM Leasing was short $53.00, the amount of a title fee that JM Leasing had paid when it purchased the truck. Kincaid further advised Miller that JM Leasing did not want to bear responsibility for paying off the lien.

On June 30, Miller wrote back that PACCAR would add the disputed $53.00 to JM Leasing's refund amount. Miller also advised Kincaid that the $53.00 increase would be tempered by a $3,751.24 "reasonable use allowance" deduction that PACCAR calculated by multiplying what it deemed to be the full purchase price of the truck ($121,952.00, the invoice price minus the federal excise tax of $13,895.00) by 3,076, the number of miles the truck had been driven before a problem was reported, and then dividing the product by 100,000. PACCAR's calculation was derived from Wis. Stat. § 218.0171(2)(b)2.b., which provided that "a reasonable allowance for use may not exceed the amount obtained by multiplying the full purchase price of the motor vehicle by a fraction, the denominator of which is 100,000, or, for a motorcycle, 20,000, and the numerator of which is the number of miles the motor vehicle was driven before the consumer first reported the nonconformity to the motor

vehicle dealer." After the $53.00 was added and the $3,751.24 was subtracted, the new amount PACCAR planned to refund JM Leasing was $114,043.61. Miller advised Kincaid that a check for that amount, along with the second lien payoff check, could be delivered to JM Leasing on July 1.

In response, Kincaid sent Miller an e-mail stating that the refund check should be delivered to her and reiterating JM Leasing's objections to receipt of the lien payoff check. Kincaid also advised Miller that JM Leasing would return the truck to PACCAR on July 5. Kincaid did not object to the amount of the refund check, or to PACCAR's calculation of the reasonable use allowance.

On July 1, PACCAR representative Mike Oswald traveled to JM Leasing to personally deliver the two checks. Oswald presented the checks to Kincaid and Michael Smiley, the owner of JM Leasing. Kincaid photocopied the checks before she and Smiley rejected them. There is some dispute as to whether Kincaid and Smiley informed Oswald that JM Leasing contested PACCAR's reasonable use allowance, but the parties agree that they at least advised Oswald of their objection to bearing responsibility for the lien payoff.

In any event, Oswald left with the rejected checks and notified Miller about the turn of events. Miller instructed Oswald to return to JM Leasing, re-offer the refund check, and advise Kincaid and Smiley that PACCAR was willing to handle the lien payoff directly. Oswald made a second visit to JM Leasing the very same day. Kincaid and Smiley again rejected the $114,043.61 refund check, asserting that the amount was incorrect. Miller subsequently sent Kincaid an e-mail summarizing his understanding (as related by Oswald) of the day's events and requesting that Kincaid

explain why JM Leasing believed that the refund check was inaccurate.

Four days later, on July 5, 2011, the first business day following the Independence Day holiday weekend, Kincaid responded to Miller's e-mail. She advised him that JM Leasing found the reasonable use allowance excessive and proposed an alternative deduction of 11.9¢ per mile, or $364.26.[2] Kincaid also informed Miller that JM Leasing would not return the truck to PACCAR in light of the parties' ongoing dispute. Miller responded by explaining that he had calculated the reasonable use allowance using the formula set forth in the Lemon Law and asking Kincaid to reconsider. Kincaid stood firm, but informed Miller how she had arrived at her number: she had replaced the 100,000 in Miller's calculation with 1,000,000.

The next day, July 6, the dealership from which JM Leasing had purchased the truck informed Miller that JM Leasing had returned the truck. Miller sent Kincaid an e-mail indicating that he understood the return of the truck to constitute an acceptance of PACCAR's refund in the amount of $114,043.61. Kincaid demurred by e-mail the following day, the final day of the 30-day period:

> In good faith, we parked the truck at the dealer on Tuesday, July 5th, because I said we would go to the dealer on Tuesday with the truck. We expected you to pay us what we had coming.
>
> The amount of $114,043.61 offered by [PACCAR] is not acceptable or agreeable. The

---

[2] Kincaid performed her calculation using 3,061 miles as the starting point.

mileage charge is too high. I made that clear in our last email as well as previous emails, including my email of July 5th.

Please send James Michael Leasing a check immediately in the sum of $117,425.73. This sum allows for a mileage charge of $369.12 per my last email. You may deliver the check to our business [or mail it].

Miller responded to Kincaid's e-mail later that day. He expressed confusion as to why JM Leasing returned the truck after representing that it was not going to. He continued:

Since James Michael Leasing will not agree to accept the check in the amount of $114,043.61 along with Kenworth direct payoff of the remaining PACCAR Financial lien balance in the amount of $61,868.30 to resolve this WI LL complaint, then James Michael Leasing needs to pick up the truck from the Oak Creek, Wisconsin dealership as soon as possible. Any delay in picking up the truck may result in the dealer charging James Michael Leasing storage fees.

Miller's pithy e-mail was the last salvo in the parties' increasingly bitter negotiations. JM Leasing retrieved the truck at some point and filed the instant suit in Wisconsin state court on July 15, 2011. JM Leasing still has possession of the truck, which it continues to make payments on.

**B.**

PACCAR removed the action to the Eastern District of Wisconsin. After discovery, the parties filed cross-motions for summary judgment. The district court denied PACCAR's motion and granted JM Leasing's in part. The district court concluded that PACCAR violated Wis. Stat. § 218.0171(2)(b)2.b. by failing to pay off JM Leasing's lien. It reasoned that "[t]he only thing the consumer must do to trigger the manufacturer's obligation to issue a refund and pay off the lien within thirty days is offer to transfer title of the vehicle to the manufacturer." Because JM Leasing had fulfilled this requirement on June 7, 2011, the court concluded that PACCAR had until July 7, 2011 to perform its statutory duties of issuing a refund check and paying off the lien. The court therefore found that JM Leasing was entitled to the damages provided under the Lemon Law: "twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees." Wis. Stat. § 218.0171(7). Relying on *Hughes v. Chrysler Motor Corp.*, 542 N.W.2d 148, 153 (Wis. 1996), the court deemed JM Leasing's "pecuniary loss" to include the full purchase price of the truck.

In light of its determination that PACCAR violated the Lemon Law by failing to pay off the lien, the district court declined to resolve the question of whether PACCAR's calculation of the reasonable use allowance also violated the Lemon Law. The court nonetheless addressed the reasonableness of PACCAR's calculation in an attempt to ascertain the amount of JM Leasing's "pecuniary loss." The court rejected PACCAR's contention that its calculation necessarily was reasonable because it tracked the statutory formula. The court construed the statute to mean that "an

allowance for use must be both reasonable and not in excess of the amount produced by the formula." That is, it treated the formula in the Lemon Law as a ceiling rather than a directive or authorization to deduct the amount produced by the formula produced in every case and specifically concluded that the deduction was not reasonable simply because it was calculated pursuant to the statutory formula. The court was unable to fully resolve the matter, however, as issues of fact remained as to what would constitute a reasonable use allowance in this case.

PACCAR filed a motion for reconsideration, which the district court denied. In doing so, the district court rejected PACCAR's contentions that JM Leasing's "pecuniary loss" was limited to the difference between the dueling reasonable use allowances proposed by the parties and that a penalty of twice the purchase price—nearly $300,000 in this case—violated the Due Process Clause. Subsequent to the court's order, the parties stipulated that JM Leasing's "pecuniary loss" was $184,598.03. This figure included the $135,847.00 "full purchase price," the originally contested $53.00 title fees, $11,767.87 in "collateral costs," and $38,805.16 that JM Leasing had paid on its lien, less a reasonable use allowance of $1,875.00.[3] This district court doubled the "pecuniary loss" to arrive at a damages award of $369,196.06. The court added $2,730.24 in prejudgment interest through October 31, 2011, the date JM Leasing made a settlement offer; $4,627.90 in statutory costs; and $2,029.45 in litigation costs. PACCAR did not object to any of these amounts. The court also

---

[3] It is unclear from the stipulation and the district court's opinion how the parties arrived at this reasonable use allowance, which we note is approximately halfway between the values they originally proposed.

awarded JM Leasing 5% interest on the damages from November 1, 2011 forward, and $146,081.25 in attorneys' fees through May 15, 2013. The court later awarded JM Leasing an additional $11,616 in attorneys' fees, for a total fee award of $157,697.25. Accordingly, the district court entered judgment in favor of JM Leasing in the amount of "$536,280.90 plus 5% interest on the amount of $369,196.06 from November 1, 2011 until that amount is paid." PACCAR timely appealed.

## II.

PACCAR contends that its overtures to JM Leasing and assurances that it would pay off the lien were sufficient to satisfy its obligations under the Lemon Law. It further contends that it was not required to pay off the lien until JM Leasing accepted its proffered refund check, that its calculation of the reasonable use allowance was in compliance with the strictures of the Lemon Law, and that JM Leasing's "pecuniary loss" is limited to the difference between the amount PACCAR tendered within the statutory period and "what was properly due and owing under the statute."

Each of these contentions amounts to a challenge to the interpretations of the Lemon Law that the district court made in its summary judgment ruling. "We review de novo the district court's decision to grant summary judgment as well as the interpretation of state law on which that decision rests." *Rodas v. Seidlin*, 656 F.3d 610, 625 (7th Cir. 2011). Our ultimate aim is to apply the Lemon Law as it has been interpreted by the Wisconsin Supreme Court. *Burzlaff v. Thoroughbred Motorsports, Inc.*, 758 F.3d 841, 847 n.4 (7th Cir. 2014). "In the absence of an authoritative interpretation from

the Wisconsin Supreme Court," we must interpret the Lemon Law "as we think the state's highest court would construe it." *Laborers Local 236, AFL-CIO v. Walker*, 749 F.3d 628, 634 (7th Cir. 2014). In doing so, we may look to decisions of the Wisconsin Court of Appeals for guidance unless there are persuasive reasons to believe that the high court would disagree with them. *Weigle v. SPX Corp.*, 729 F.3d 724, 737 (7th Cir. 2013).

The parties agree that JM Leasing is a "consumer" within the meaning of the Lemon Law and that the truck at issue is a lemon. Under the plain text of the Lemon Law then in effect, JM Leasing had a right to seek from PACCAR either replacement of the truck or a refund. *See* Wis. Stat. § 218.0171(2)(b)2. JM Leasing chose the latter and made an offer to transfer title of the truck to PACCAR. *See* Wis. Stat. § 218.0171(2)(c). JM Leasing's offer triggered an obligation for PACCAR to do the following, within 30 days:

> Accept return of the motor vehicle and refund to the consumer and to any holder of a perfected security interest in the consumer's motor vehicle, as their interest may appear, the full purchase price plus any sales tax, finance charge, amount paid by the consumer at the point of sale and collateral costs, less a reasonable allowance for use. Under this [provision], a reasonable allowance for use may not exceed the amount obtained by multiplying the full purchase price of the motor vehicle by a fraction, the denominator of which is 100,000 or, for a motorcycle, 20,000, and the numerator of which is the number of

> miles the motor vehicle was driven before the
> consumer first reported the nonconformity to
> the motor vehicle dealer.

Wis. Stat. § 218.0171(2)(b)2.b. "When the manufacturer provides the … refund, the consumer shall return the motor vehicle having the nonconformity to the manufacturer and provide the manufacturer with the certificate of title and all endorsements necessary to transfer the title to the manufacturer." *Id*. § 218.0171(2)(c). The Lemon Law authorizes consumers to "bring an action to recover for any damages caused by a violation," and instructs the court to award to a prevailing consumer "twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees, and any equitable relief the court determines appropriate." *Id.* § 218.0171(7).

In describing the pre-amendment version of the statute at issue, the Wisconsin Supreme Court observed that "[e]ven among lemon laws, all of which are geared toward consumer protection, Wisconsin's Lemon Law is particularly pro-consumer in a number of ways." *Marquez v. Mercedes-Benz USA, LLC*, 815 N.W.2d 314, 322 (Wis. 2012). For instance, the version of the law at issue here permits the recovery of double damages, attorneys' fees and costs, and lacks both affirmative defenses and mechanisms to obtain sanctions against consumers who bring claims in bad faith. *Id.* As the Wisconsin Supreme Court further explained, "the Wisconsin legislature has expressed a strong preference for the interests of a consumer who purchased a lemon over the interests of the manufacturer who produced the lemon." *Id.* Accordingly, the Wisconsin Supreme Court has held that the Lemon Law "squarely places the burden on the

manufacturer to provide a refund within the 30-day statutory period." *Id.*

PACCAR contends that it carried that burden by timely tendering the $114,043.61 check to JM Leasing and accepting responsibility for paying off (but not actually paying off) JM Leasing's lien. We do not believe that the Wisconsin Supreme Court would agree. That court begins and ends its statutory analyses with the text of a statute when the plain meaning is clear. *Tammi v. Porsche Cars N. Am., Inc.*, 768 N.W.2d 783, 791 (Wis. 2009). The plain text of the Lemon Law obligates manufacturers like PACCAR to "*refund* to the consumer and *to any holder of a perfected security interest in the consumer's motor vehicle*, as their interest may appear, the full purchase price plus any sales tax, finance charge, amount paid by the consumer at the point of sale and collateral costs, less a reasonable allowance for use." Wis. Stat. § 218.0171(2)(b)2.b. (emphases added). This language requires manufacturers to actually refund the money due within 30 days, not simply to agree to do so. Moreover, it requires them to refund the money directly to the holder of the security interest rather than leaving the consumer "to sort it out with the lender." *Marquez v. Mercedes-Benz USA, LLC*, 751 N.W.2d 859, 862–63 (Wis. Ct. App. 2008); *cf. Estate of Riley ex rel. Riley v. Ford Motor Co.*, 635 N.W.2d 635, 638 (Wis. Ct. App. 2001) ("[D]elivery of a refund check to a dealership's sales manager is not the equivalent of a timely delivery of a refund check to the consumer."). PACCAR points to *Herzberg v. Ford Motor Company*, 626 N.W.2d 67, 72 (Wis. Ct. App. 2001), for the proposition that a party that "stands ready" to comply with its obligations under the Lemon Law satisfies its statutory duties. In *Herzberg*, however, the party that "stood ready" to comply with its

obligations was the consumer. In light of the Wisconsin Supreme Court's determination that the manufacturer must bear the burden of providing the refund, we cannot conclude that a manufacturer's assurance that it will do so is sufficient to fulfill its obligation under the Lemon Law. *See Church v. Chrysler Corp.*, 585 N.W.2d 685, 688 (Wis. Ct. App. 1998) (stating that the Lemon Law "clearly requires that the manufacturer issue a refund within thirty days of the consumer's offer to transfer title").

We are equally unpersuaded by PACCAR's suggestion that JM Leasing's "rejection of the refund amounts, coupled with its unequivocal pronouncement that it would not return the vehicle, relieved PACCAR of its otherwise concomitant duty to pay off the lien." The Lemon Law obligates the consumer to return the vehicle or certificate of title to the manufacturer only "[w]hen the manufacturer provides the new motor vehicle or refund." Wis. Stat. § 218.0171(2)(c). Thus, JM Leasing's refusal to return the vehicle did not absolve PACCAR of its duty to fulfill its statutory obligations. The parties' duties are linked, as PACCAR suggested during oral argument, but the link is a sequential one pursuant to which the manufacturer must take the lead. PACCAR has not expressly argued that JM Leasing acted to intentionally thwart its attempts to comply with the Lemon Law, and absent such a contention (or evidence in support thereof) we hew to the Wisconsin Supreme Court's practice of limiting manufacturers' "excuses" for noncompliance. *Marquez*, 815 N.W.2d at 323. When parties cannot agree on the correct amount of a refund, the manufacturer has two options: "(1) pay the amount demanded by the purchaser within the thirty-day period; or (2) pay the amount which the manufacturer

deems appropriate within the thirty-day period." *Church*, 585 N.W.2d at 689. Playing chicken with the consumer regarding the amount of the refund and the return of the vehicle is not a viable alternative to those narrow options. As the Wisconsin Supreme Court has stated, the manufacturer "must weigh very carefully when 'to hold 'em and when to fold 'em,'" *Tammi*, 768 N.W.2d at 794 (quoting Kenny Rogers, *The Gambler*, *on* The Gambler (United Artists 1978)), and PACCAR made a bad bet here.

In reaching this conclusion, we hasten to add that we do not endorse JM Leasing's conduct here. It neglected to clarify its rationale for declining PACCAR's proffered checks, inexplicably returned the truck after informing PACCAR that it would not, and generally gave PACCAR a bit of a runaround. In fact, both parties engaged in tit-for-tat gamesmanship that turned what should have been a fairly routine business transaction into the proverbial federal case, with all of the attendant financial and emotional costs that go with that territory. The task of the federal courts in this case has been to give effect to the Wisconsin legislature's "strong preference for the interests of a consumer who purchased a lemon over the interests of the manufacturer who produced the lemon." *Marquez*, 815 N.W.2d at 322. And while JM Leasing, a reasonably sophisticated business entity, may not be the typical "consumer" that the legislature had in mind when it crafted the broadest reaches of the Lemon Law, it nonetheless is entitled to the full protection of the statute. Unfortunately for PACCAR, that protection in this case comes at the price of particularly "potent consequences." *Tammi*, 768 N.W.2d at 791. Setting these consequences is a matter for the Wisconsin legislature, which, as we briefly noted above, recently has trimmed back

some of the more generous consumer protections in the statute. See *supra*, at fn.1; *Church*, 585 N.W.2d at 689.

For the sake of completeness, we address PACCAR's remaining contentions. First, PACCAR contends that JM Leasing's "pecuniary loss" is limited to the difference between the parties' calculated use allowances. "The statute is silent as to whether pecuniary loss includes the purchase price of the vehicle." *Hughes v. Chrysler Motors Corp.*, 542 N.W.2d 148, 150 (Wis. 1996). But the Wisconsin Supreme Court has held that "the legislature intended to include the purchase price of the car as pecuniary damages." *Id.* at 151; *see also Burzlaff*, 758 F.3d at 847 ("*Hughes* held that 'pecuniary loss' as used in the damages provision of the Lemon Law included the purchase price, not merely the costs flowing from the defect."). The court explained that if the contrary conclusion were reached, the Lemon Law would fail in its purpose to significantly improve upon the remedies available to consumers, manufacturers would have little if any incentive to promptly comply with the statute, and consumers would have little incentive to seek compensation for violations of their statutory rights. *See id.* at 151–52. Unlike PACCAR, we do not find *Hughes* distinguishable on the basis that the manufacturer in that case did not offer any refund until after the 30-day window had closed. The *Hughes* manufacturer's argument that the consumer's "pecuniary loss should be limited to the out-of-pocket expenditures [he] made during those 35 days," *Hughes*, 542 N.W.2d at 153, is very similar to that raised by PACCAR here: that damages should be limited to so-called actual loss rather than what is provided in the statute. Given the text of the statute and the interpretations of it by the Wisconsin Supreme Court, we

cannot conclude that JM Leasing's "pecuniary loss" should be restricted here.

Finally, PACCAR contends that its calculation of the reasonable use allowance necessarily complied with the requirements of the Lemon Law because it was made pursuant to the formula set forth in the Lemon Law. *See* Wis. Stat. § 218.0171(2)(b)2.b. PACCAR acknowledges that the district court "did not address whether PACCAR violated the statute when it calculated the refund using that formula," and we are not in the business of resolving matters of state law that the district court did not pass upon and that are not strictly necessary to the resolution of the appeal. (This is particularly true where the parties stipulated that $1,875.00, an amount other than that prescribed by the formula, is a "reasonable use allowance for the plaintiff's use of 2008 Kenworth T800 that is the subject of this action.") We nonetheless note that the Wisconsin Supreme Court has characterized the formula as "creating a ceiling on the amount that may be deducted as 'a reasonable allowance for use' from a refund of the full purchase price," *Tammi*, 768 N.W.2d at 793 (quoting Wis. Stat. § 218.01717(2)(b)2.b.), not as a safe harbor for manufacturers. "The ceilings provided in the statute are not inflexible," and "'reasonable allowance for use' is not a precise term," *id.* at 797, even though the formula itself is quite precise. As the district court observed, "[o]nly in cases like the present one, in which the vehicle being returned has a useful life well in excess of 100,000 miles, will the formula produce an arguably excessive deduction for use." These are the very types of cases in which the "not inflexible" nature of the ceiling lends itself to negotiation and compromise between the parties—at the cost of only a few thousand dollars.

Again, we recognize that the atypical nature of the vehicle at issue in this case led to an award that far exceeds the amounts awarded in the mine run case. But statutes of general applicability often are blunt instruments, and the Wisconsin Supreme Court has made it clear that "[a] manufacturer that fails to comply timely with a consumer's demand under (2)(b)2. assumes the risk of paying twice the vehicle's full purchase price and other items mentioned in (2)(b)2.b.—namely, 'any sales tax, finance charge[s], amount paid by the consumer at the point of sale and collateral costs'—plus the consumer's reasonable attorney fees, plus other 'costs' and 'disbursements' and even possible 'equitable relief,' plus its own attorney fees, if any." *Tammi*, 768 N.W.2d at 793-94.

### III.

For all of the reasons stated above, the judgment of the district court is AFFIRMED.